**FISHER STUDIO, Inc. and Robert V. Fisher, Plaintiffs-Appellants,**

**and**

**David H. Isacson and Malkan & Isacson, Appellants,**

**v.**

**LOEW'S INCORPORATED et al., Defendants-Appellees.**

**No. 233, Docket 23908.**

United States Court of Appeals Second Circuit.

Argued Feb. 15, 1956.

Decided April 2, 1956.

Bruno Schachner, New York City (David H. Isacson and Arnold G. Malkan, New York City, on the brief), for plaintiffs-appellants.

Bruce Bromley, New York City (Louis Phillips, John Logan O'Donnell, and Leo P. Arnaboldi, Jr., New York City, on the brief), for defendants-appellees.

Before CLARK, Chief Judge, and FRANK and HINCKS, Circuit Judges.

CLARK, Chief Judge.

This is another of the several appeals before us recently involving the issue of attorneys' disqualification for previous representation of the defendants in antitrust cases. The background of this case is set forth in Laskey Bros. of West Virginia v. Warner Bros. Pictures, 2 Cir., 224 F.2d 824, certiorari denied 350 U.S. 932, 76 S.Ct. 300, which actually concerns a later disqualification of attorneys dependent on the facts here brought out below. See also Consolidated Theatres v. Warner Bros. Circuit Management Corp., 2 Cir., 216 F.2d 920, establishing the controlling principles of law.

This particular appeal comes from orders made in an antitrust action brought by certain exhibitors of 16 mm. motion

picture films against fifteen film producers and distributors alleging arbitrary restriction upon the distribution and exhibition of 16 mm. films and the establishment and maintenance of a price-fixing system against the plaintiffs. Plaintiffs, their attorney David H. Isacson, and the dissolved law firm of Malkan & Isacson are appealing from an order of the district court disqualifying Isacson and his firm from representing the plaintiffs. Upon defendants' original motion for disqualification the court referred the matter to Special Master Harold F. McNiece, who filed a report of over 200 pages concluding that both Isacson and the firm were disqualified. Judge Abruzzo adopted and confirmed the report and ordered the recommended disqualification. Subsequently he denied a motion for new trial on the issue of disqualification. The appeal is from both these orders. Later the judge entered a third order interpreting a prior stipulation of the parties, by which interpretation the disqualification was made applicable to all 35 mm. and 16 mm. antitrust cases and underreporting cases to which defendants were party. This, too, is the subject of appeal, with a request for consolidation of the appeals.

The facts upon which the disqualification was based were exhaustively developed in the procedings before the Special Master and are set forth in convincing detail in his thorough report. We shall make only a summary reference to them here.

Isacson was employed by the law firm of Sargoy & Stein between November, 1946, and March, 1951. Sargoy & Stein was organized in 1946, and during the period of Isacson's employment was the legal representative of eight of the present defendants or their corporate predecessors, if any, in matters closely related to this suit. It also rendered services to and received compensation from a ninth defendant in respect to treble-damage antitrust claims. Sargoy & Stein rendered services to four other defendants, which were either subsidiaries or film distributors of its clients, but received no compensation from them. As to the other two defendants, which also acted as film distributors for certain of Sargoy & Stein's clients, the evidence is unclear, but the law firm "may" have dealt with matters involving these defendants.

Sargoy & Stein first employed Isacson as an auditing clerk, but from the early part of 1947 he assumed the duties of a lawyer and his name appeared on the firm's letterhead. As a member of the firm's staff, he was in a position to acquire knowledge of the manner in which the companies did business in the 16 mm., as well as the 35 mm., field. This included knowledge as to which companies produced 16 mm. prints; the use to which they put them; the manner of licensing of 16 mm. pictures for exhibition; the limitations, if any, that were imposed on the distribution; the contractual provisions between the companies and their licensees, limiting the use of the pictures; and the terms of the licenses. All this information was accessible to him from the files of Sargoy & Stein.

During Isacson's employment, the firm brought or participated in 464 suits on behalf of distributors against exhibitors for percentage frauds or underreporting or other actions for recovery of rentals. Of these, at least 233 involved antitrust defenses, counterclaims, or countersuits by exhibitors. Of these 233 cases, Isacson, then on behalf of distributors, initialed or marked memoranda or correspondence in every one, wrote letters or memoranda in 170 of the cases, and participated in taking depositions in 72. There was convincing evidence that Isacson worked on and was well acquainted with the antitrust aspects of a number of cases and his evasive testimony at the Master's hearing did not serve to rebut this conclusion. Although his work primarily involved 35 mm. matters, he had access to the 16 mm. files and 16 mm. matters were on occasion discussed with him. In any event, 35 mm. and 16 mm. antitrust problems are so related

that confidential information gained in one area would be of value in the other.

Fisher, one of the plaintiffs in this action, first came into contact with Sargoy & Stein in 1946 when he visited their office. Isacson met Fisher through a mutual acquaintance in that office. Isacson left Sargoy & Stein in March, 1951; and the complaint in this action was filed in September, 1952. There was testimony that in August, 1952, Isacson telephoned an attorney employed by Sargoy & Stein to inquire if he knew the names of persons in the 16 mm. film field who might have justifiable complaints and asked specifically about Fisher. And there were other circumstances from which solicitation of this suit by Isacson might have been strongly inferred.

On the basis of all the evidence both the Special Master and Judge Abruzzo found that Isacson had violated Canons 6 and 37 of the Canons of Professional Ethics of the American Bar Association [1] by utilizing the private and confidential information obtained while an employee of Sargoy & Stein as a basis for a lawsuit against the clients of that firm. The Master further found that he had violated Canons 27 and 28 [2] by soliciting the lawsuit. Judge Abruzzo entered an order of disqualification as to all defendants on the basis of improper use of confidential information alone, but the Special Master relied on this ground as to the nine clients of Sargoy & Stein only, and upon solicitation as to the other defendants.

There was ample evidence to support findings of violation of Canons 6 and 37. It is apparent that Isacson had access to significant quantities of confidential information of great value in the prosecution of this case. In fact the inference is overwhelming that Isacson's primary value to the plaintiffs here lies in his possession of this information. Isacson left Sargoy & Stein early in March, 1951, and did not enter into partnership with Malkan until July, 1952. During that time he unsuccessfully tried to obtain legal employment, operated a garage, and even made an effort to rejoin Sargoy & Stein. His lack of legal success during this interim period when viewed in connection with the formation of the partnership and the subsequent institution of this lawsuit lend impressive weight to the conclusion that the confidential information was the principal reason for his retainer by Fisher.

Similarly, if here pertinent, the evidence of solicitation is clear cut and convincing, and in many cases is interwoven with the evidence of improper use of confidential information. For example, the Special Master found that Isacson sent a letter to one Coy, a potential client who was then engaged in litigation against certain motion picture companies represented by Sargoy & Stein, stating "that Mr. Isacson here was formerly with Sargoy & Stein and is familiar with the procedures and tactics and settlements." The record is replete with other evidence of solicitation and advertisement. As pithily put by

1. Of Canon 6, "Adverse Influences and Conflicting Interests," the most pertinent part here is the last paragraph, viz.:
 "The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed."
 The first two sentences of Canon 37, "Confidences of a Client," are as follows: "It is the duty of a lawyer to preserve his client's confidences. This duty outlasts the lawyer's employment, and ex-

tends as well to his employees; and neither of them should accept employment which involves or may involve the disclosure or use of these confidences, either for the private advantage of the lawyer or his employees or to the disadvantage of the client, without his knowledge and consent, and even though there are other available sources of such information."

2. Canon 27 holds it unprofessional to solicit professional employment through advertising, touters, or personal communications, while Canon 28 so treats the stirring up of litigation, directly or through agents.

the Special Master, "All that was missing from Mr. Isacson's campaign was a neon sign."

■ Appellants' principal argument is directed to an alleged deprivation of due process on the ground that they were denied the opportunity to inspect certain 16 mm. files of Sargoy & Stein which were submitted to the Special Master and inspected by him. It appears, however, that the files were produced only upon the demand of appellants and over the objection of appellees that they were privileged communications relevant to the main action. Appellees therefore did not rely upon the files, which thus were not presented to fill gaps in their proof. It seems from the colloquy set forth in appellants' appendix that they did not then object to the Master's refusal to allow them to inspect the files concerning the 16 mm. films; in any event, at the end of the hearing they expressly agreed to waive all evidentiary objections not raised in their brief before the Master. They now refer to asserted objections in their brief before the Master and in their later formal document entitled "Objections to Confirmation of Master's Report." The former is not before us, but the latter is and shows by the very general nature of the objections cited that the then trial counsel did not have particularly in mind the point now stressed. In fact it was not urged until almost two months after the judge had handed down his opinion confirming the Master's Report. Hence appellants' waiver was complete, and they should not be heard to raise the point here. See State ex rel. McKittrick v. Wallach, 353 Mo. 312, 182 S.W.2d 313, 155 A.L.R. 1. But on the equities there is little to be said for such a violation of privacy as would be involved in thus opening these private files to a public and rival gaze; even if appellants' rather exaggerated emphasis upon a supposed separation of 35 mm. and 16 mm. business be somewhat accepted, the most that appellants could hope to achieve would be to lessen the cumulative effect of the

evidence, but not to provide that affirmative exoneration which is vital for their salvation. We think that the Master exercised a wise discretion in his ruling, and that the court acted properly in affirming it.

■ Appellants further object to the denial of their motion for a new trial based primarily upon grounds of newly discovered evidence. This evidence consisted in essential part of the testimony of one Siegel—attemping to modify his testimony before the Master —and one Hilton, who had not testified previously. The court granted a hearing at which an attempt was made to show that the information in the 16 mm. files had not in fact been available to Isacson while he was in the employ of Sargoy & Stein. It is quite doubtful that this "newly discovered evidence" could have changed the result if a new trial had been granted. See Irvin v. Buick Motor Co., 8 Cir., 88 F.2d 947, 951, certiorari denied 301 U.S. 702, 57 S.Ct. 932, 81 L.Ed. 1357; Glade v. Allied Electric Products, 7 Cir., 135 F.2d 590. In any event there was not an abuse of discretion in refusing to grant a new trial on the basis of the dubious evidence presented by appellants. Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439; Campbell v. American Foreign S. S. Corp., 2 Cir., 116 F.2d 926, 928, certiorari denied 313 U.S. 573, 61 S.Ct. 959, 85 L.Ed. 1530; Gillette Safety Razor Co. v. Triangle Mechanical Laboratories Corp., 2 Cir., 87 F.2d 699, 702. Appellants object to the conduct of this hearing by the judge, and we are constrained to say that he acted far from judicially in his interruptions of the witnesses and counsel and his attitude showing personal pique and offense at the challenge to his prior ruling. He should not have taken the trial into his own hands, see United States v. Steiner Plastics Mfg. Co., 2 Cir., 231 F.2d 149; indeed, it would have been preferable that no formal hearing be held rather than one of partial character. But appellants' fate was clear after the thorough trial before

the Master; and however regrettable this incident, it should not lead to a reversal of a long and well-proven case with a salutary conclusion.

■ Appellants also object to the judge's further order of March 22, 1955, interpreting a prior stipulation of the parties and disqualifying Isacson as to 35 mm., as well as 16 mm., antitrust actions. The appeal from this order was taken by Malkan and Ellner and the law firm of Malkan & Ellner—a later partnership than the one here most directly involved. But, particularly since Malkan is an active participant in both appeals, we see no reason to dismiss this appeal for want of prosecution, as defendants urge. Plaintiffs seek to hold the order beyond the jurisdiction of the court, since the previous appeal had already been taken when it was entered. Were this a review of a seemingly final judgment in the main antitrust action, the point would doubtless be well taken; but since these orders of disqualification are collateral to the main case and this final order but interprets the stipulation of the parties to deduce from it the extent of future disqualification, we think it also appropriately treated as a separate and collateral proceeding. On the merits it seems within the terms of the stipulation. Compare Laskey Bros. of West Virginia v. Warner Bros. Pictures, supra, 2 Cir., 224 F.2d 824, certiorari denied 350 U.S. 932, 76 S.Ct. 300.

■ Finally, we reach the question whether the disqualification should properly run in favor of all fifteen defendants in the present action or only those who were clients of Sargoy & Stein when Isacson was associated with that firm. While the district court found sufficient similarity of interest, exchange of information, and consort of action among all the defendants to justify a disqualification as to all, we think the evidence is not clear enough to support such a sweeping ban except as to those nine defendants who were former clients of the law firm. Consolidated Theatres v. Warner Bros. Circuit Management Corp., supra, 2 Cir., 216 F.2d 920, 928. We do not however regard our holding here as res judicata with respect to suits against the other six defendants. While lawyers ought not to be subjected to recurrent harassment by way of disqualification proceedings, the power of the court to control its officers is continuous and the remedy of disqualification is an instrument to that end. Our holding is based on lack of evidence, not necessarily on the absence of any case; if further facts justifying disqualification appear, the district court is at liberty to take such action as it deems appropriate.

■ We do not think that the solicitation shown here may form a separate ground for disqualification and thus justify such action as to the six nonclient defendants. Solicitation may well merit appropriate discipline; but it appears quite incongruous that disqualification should be the remedy, separating the client from his counsel without substitution of other protection for the client's interest. And the possibilities of endless disputes at the inception of lawsuits as to how the business was obtained are not to be overlooked.

Hence we find David H. Isacson and the firm of Malkan & Isacson properly disqualified under the terms of the order of March 22, 1955, as to the defendants Loew's Incorporated, Paramount Pictures Corporation, Twentieth Century-Fox Film Corporation, Warner Bros. Pictures, Inc., Warner Bros. Pictures Distributing Corporation, RKO Radio Pictures, Inc., Columbia Pictures Corporation, Universal Pictures Company, Inc., and Republic Pictures Corporation; but this order of disqualification will not run as to the other defendants. The orders appealed from will therefore be modified to eliminate these other defendants as indicated; as thus modified they are affirmed. No costs will be taxed on this appeal.

Modified and affirmed as modified.

HINCKS, Circuit Judge (concurring).

Although in complete agreement with the majority opinion, I feel constrained to say that I acquiesce in the failure of the court to refer the case for the institution of disciplinary proceedings against Mr. Isacson only because of my belief that on the facts of this case his adjudged disqualification, even though not imposed as disciplinary action, serves as an adequate penalty for all such unprofessional conduct as was disclosed in the disqualification proceedings below in the findings which we have affirmed.