Samuel J. LEFRAK et al.,
Plaintiffs-Appellees,

v.

ARABIAN AMERICAN OIL COMPA-
NY et al., Defendants-Appellants.

ROCHDALE VILLAGE, INC.,
Plaintiff-Appellee,

v.

ARABIAN AMERICAN OIL COMPA-
NY et al., Defendants-Appellants.

NEW YORK CITY HOUSING AU-
THORITY, Plaintiff-Appellee,

v.

ARABIAN AMERICAN OIL COMPA-
NY et al., Defendants-Appellants.

Nos. 117–119, Dockets 75–7234–75–7236.

United States Court of Appeals,
Second Circuit.

Argued Oct. 30, 1975.

Decided Dec. 12, 1975.

Frank Raichle, Buffalo, N. Y., for plaintiffs-appellees.

Robert MacCrate, New York City (Sullivan & Cromwell, New York City, Robert M. Osgood, Kenneth M. Bialo, New York City, of counsel), for defendants-appellants.

Before MULLIGAN, VAN GRAAFEILAND and MESKILL, Circuit Judges.

MULLIGAN, Circuit Judge:

The appellants here are four of the eleven defendants (Exxon Corporation, Gulf Oil Corporation, Texaco, Inc. and Arabian American Oil Company) in three

non-class antitrust actions [1] pending in the United States District Court for the Eastern District of New York. Their appeal is from an order of Hon. Mark A. Costantino filed on March 11, 1975 denying their motion to disqualify David Berger, P.A. (Berger firm) from continuing to represent the plaintiffs Samuel J. Lefrak, the New York City Housing Authority and Rochdale Village, Inc. in those pending actions. The appellants further sought an injunction against the Berger firm and those alleged to be in concert with it, principally the firm of Wien, Lane & Malkin (Wien firm), from soliciting clients to join as plaintiffs in the pending actions. The plaintiffs are owners of multi-dwelling residences located in the New York City area who charge that a price-fixing conspiracy among the eleven defendants caused them to pay artificially high prices for heating oil.

On February 21, 1975 Exxon filed papers in the district court and obtained an *ex parte* order from Judge Costantino forbidding the Berger and Wien firms from initiating communications with any potential plaintiffs. The defendants-appellants' motion was based essentially on documents they discovered in February, 1975 which on their face suggested that improper efforts were being undertaken to encourage the filing of identical claims against the defendants in violation of New York Judiciary Law § 479 as well as Disciplinary Rules DR 2–103(C), (D) and (E) and 2–104(A)(1) of the Code of Professional Responsibility.[2] Essentially, the claim of disqualification is based on improper solicitation of clients directly or indirectly through laymen and accepting employment as a result thereof. The documents in issue were letters distributed by Sulzberger-Rolfe, Inc. (Sulzberger) and Douglas L. Elliman & Co., Inc. (Elliman), two prominent New York real estate firms which act as managing agents for a large number of New York cooperative apartment buildings. The letters were sent to the presidents of the boards of trustees of the cooperatives managed by these firms. The letters advised that there

---

1. The three actions are *Lefrak v. Arabian American Oil Co.*, 74–C–1700 (filed December 3, 1974); *New York City Housing Authority v. Arabian American Oil Co.*, 75–C–15 (filed December 24, 1974); and *Rochdale Village, Inc. v. Arabian American Oil Co.*, 75–C–135 (filed January 29, 1975). They all assert claims under section 1 of the Sherman Act, 15 U.S.C. § 1. These cases have been assigned to Hon. Mark A. Costantino for all purposes.

2. The pertinent provisions of the statute and rules are as follows:

N.Y. Judiciary Law § 479. *Soliciting business on behalf of an attorney.*

It shall be unlawful for any person or his agent, employee or any person acting on his behalf, to solicit or procure through solicitation either directly or indirectly legal business, or to solicit or procure through solicitation a retainer, written or oral, or any agreement authorizing an attorney to perform or render legal services, or to make it a business so to solicit or procure such business, retainers or agreements.

DR 2–103. *Recommendation of Professional Employment*

. . . . .

(C) A lawyer shall not request a person or organization to recommend employment, as a private practitioner, of himself, his partner, or associate, except that he may request referrals from a lawyer referral service operated, sponsored, or approved by a bar association representative of the general bar of the geographical area in which the association exists and may pay its fees incident thereto.

(D) A lawyer shall not knowingly assist a person or organization that recommends . . . the use of his services or those of his partners or associates . . . .

(E) A lawyer shall not accept employment when he knows or it is obvious that the person who seeks his services does so as a result of conduct prohibited under this Disciplinary Rule.

DR 2–104. *Suggestion of Need of Legal Services*

(A) A lawyer who has given unsolicited advice to a layman that he should obtain counsel or take legal action shall not accept employment resulting from that advice, except that:

(1) A lawyer may accept employment by a close friend, relative, former client (if the advice is germane to the former employment), or one whom the lawyer reasonably believes to be a client.

was a pending law suit for treble damages in the Eastern District for claimed overcharges for fuel oil; that David Berger, a prominent Philadelphia trial attorney, and Wien, Lane & Malkin, as associate counsel, had been retained by various residential owners; that counsel fees were on a one-third contingency basis and that intervenors were being asked to advance the sum of $1.00 per apartment for out-of-pocket expenses. In addition to indicating that the complaint sought millions of dollars, the Sulzberger letter also enclosed an unsigned retainer agreement on the Berger letterhead. It is obvious that there was cause for inquiry and on March 3, 1975 a hearing was held. The plaintiffs filed seven affidavits from attorneys in both the Berger and Wien firms as well as from officers of Sulzberger and Elliman which purported to explain the origin and transmittal of the letters. Exxon supplied an additional affidavit describing three additional letters which were in substance similar to the prior circulars.

Counsel for Exxon requested the adjournment of the March 3 hearing and it was finally conducted by Judge Costantino on March 5, 1975. Counsel for Exxon insisted that he had the right to interrogate the witnesses at the hearing. Judge Costantino disagreed, characterizing the hearing as a "judicial proceeding" and not an "adversary proceeding." Counsel for Exxon then submitted to the court an outline of the questions intended to be asked of each of the witnesses. The court stated that counsel had the right to indicate what transgressions were claimed to have been committed, but stated that he did not "have the right to be the advocate, nor be my advocate." The court took a ten-minute recess to examine the proposed questions and thereafter counsel for plaintiffs, who was also given a copy of them, indicated his objection to those questions which involved confidential attorney-client relationships. When the hearing was resumed Judge Costantino stated that he would not ask all of the questions propounded but would limit his questions to those he considered germane to the solicitation issue. At the hearing David Berger and Stanley Wolfe of the Berger firm, and William J. Lippman and Ralph Felsten of the Wien firm, testified and answered all of the court's questions. On March 11 Judge Costantino filed a ten-page opinion in which he found that "[a]ll communications by members of the Wien and Berger firms . . . appear to have been made in compliance with instructions given by clients or in response to specific inquiries from clients or others." He found that "plaintiffs' attorneys violated neither the spirit nor letter of the Code of Professional Responsibility and section 479 of the Judiciary Law." He vacated the stay of February 21, 1975 and stated that counsel for plaintiff should advise Sulzberger not to distribute copies of the law firm retainer forms to any potential claimant. He denied as unwarranted the alternate relief sought by the defendants which would have required the Berger and Wien firms to advise the recipients of the Sulzberger and Elliman letters that they were unauthorized and that the firms were not available to represent them.

## I

In *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 496 F.2d 800 (2d Cir. 1974) this court *en banc* overruled prior circuit precedents and held that an order of the district court refusing to disqualify an attorney for unprofessional conduct was directly appealable to this court on the authority of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The theory underlying the decision was that the issue involved a final disposition of a claimed right, not requiring consideration of the merits of the cause of action, and "if unresolved, might well taint a trial," thus needlessly expending judicial and attorney trial time. *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., supra,* 496 F.2d at 806. Judge Moore presciently forecast that "[c]harges of

conflict of interest and motions to disqualify will probably increase rather than abate." *Id.* at 803. Certainly since that opinion was written this court has had several appeals based on the conflict of interest problem.[3] The appeal before us is not based on conflict of interest, however, but rather on a charge that plaintiffs' counsel has solicited clients in violation of section 479 of the New York Judiciary Law and related provisions of the Code of Professional Responsibility. We emphasize that there is no evidence and no claim made that the plaintiffs in the three separate pending antitrust actions were in fact solicited by their counsel or anyone else. Rather the charge is that counsel solicited *other* prospective plaintiffs, none of whom have surfaced as intervenors or as plaintiffs in comparable actions against the defendants-appellants. In sum, there is no taint attached to counsel's representation of the clients who are plaintiffs in the pending law suits.

The only comparable case we have discovered in this circuit is *Fisher Studio, Inc. v. Loew's Inc.,* 232 F.2d 199 (2d Cir.), cert. denied, 352 U.S. 836, 77 S.Ct. 56, 1 L.Ed.2d 55 (1956). There counsel for plaintiffs in an antitrust suit was held to be flagrantly soliciting clients who commenced an action against fifteen motion picture companies. In addition, nine of these defendants were former clients of plaintiffs' counsel and there was clear evidence of improper use by him of confidential information obtained as defendants' prior counsel. Despite these findings of clear and convincing evidence of solicitation Chief Judge Clark, writing for this court, held:

> We do not think that the solicitation shown here may form a separate ground for disqualification and thus justify such action as to the six non-client defendants. Solicitation may well merit appropriate discipline; but it appears quite incongruous that dis-

qualification should be the remedy, separating the client from his counsel without substitution of other protection for the client's interest. And the possibilities of endless disputes at the inception of lawsuits as to how the business was obtained are not to be overlooked.

*Id.* at 204. How much more incongruous would it be to separate nonsolicited clients from the counsel of their choice here.

The misconduct complained of does not infect either the merits, the competence or the ethics of the representation in the pending actions. Even if the appellants could establish that counsel had sought, albeit unsuccessfully, to secure additional clients as intervenors or as separate suitors, it is extraneous to the pending litigation. We therefore fail to see how disqualification is the appropriate remedy. Even if the existing plaintiffs had been solicited, under *Fisher Studio, Inc. v. Loew's Inc., supra,* the remedy of disqualification would be unwarranted. A fortiori, such relief is inappropriate here. There has been no taint established and no possible prejudice to the defendant in permitting these actions to proceed to trial and judgment. A majority of the defendants have not even joined in the motion to disqualify.

Moreover, there may even be a question of the appealability of this order. As we have indicated, the reasoning of this court in *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., supra,* was that the unprofessional conduct there involved, conflict of interest, might if unresolved taint the trial leading to a waste of attorney and judicial trial time. That eventuality does not exist here. However, we only raise the issue since it has not been briefed or argued. Both sides have assumed appealability in reliance on our *en banc* decision in *Silver Chrysler Plymouth* which does not pur-

---

**3.** For a discussion of the cases see Note, The Second Circuit and Attorney Disqualification—*Silver Chrysler* Steers in a New Direction, 44 Ford.L.Rev. 130 (1975). See also *J. P. Foley & Co. v. Vanderbilt,* 523 F.2d 1357 (2d Cir. 1975).

port to limit appealability to conflict of interest cases.

Since we have found that disqualification is not the appropriate remedy, we could affirm on this point alone. However, another argument has been raised on appeal which deserves discussion.

## II

The appellants here do not seek a reversal of the order of the court below and a disqualification of counsel. Rather, they ask us to vacate that order and remand to the district court for further hearings "with instructions for a full and vigorous investigation of the underlying facts." The remand sought is based on the premise that the disqualification proceeding is not properly termed a "judicial proceeding" but in fact is adversary in nature, entitling the defendants' counsel to employ the traditional litigation techniques of discovery as well as direct and cross-examination. We think that this argument is based upon a misconception of the proceeding below and is in fact unsupported by authority. On the contrary, more than a century ago Mr. Justice Field in *Randall v. Brigham*, 74 U.S. (7 Wall.) 523, 540, 19 L.Ed. 285 (1869) made the following pertinent comments:

> It is not necessary that proceedings against attorneys for malpractice, or any unprofessional conduct, should be founded upon formal allegations against them. Such proceedings are often instituted upon information developed in the progress of a cause; or from what the court learns of the conduct of the attorney from its own observation. Sometimes they are moved by third parties upon affidavit; and sometimes they are taken by the court upon its own motion. All that is requisite to their validity is that, when not taken for matters occurring in open court, in the presence of the judges, notice should be given to the attorney of the charges made and opportunity afforded him for explanation and defence. The manner in which the proceeding shall be conducted, so

that it be without oppression or unfairness, is a matter of judicial regulation.

This court recently held in *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975):

> The district court bears the responsibility for the supervision of the members of its bar. . . . The dispatch of this duty is discretionary in nature and the finding of the district court will be upset only upon a showing that an abuse of discretion has taken place.

(citations omitted). Certainly the method of conducting the inquiry is within the discretion of the judge charged with the responsibility of supervision. This court has not mandated any procedure. The trial judge may be able to make the determination of impropriety *vel non* on the basis of oral arguments and affidavits, *General Motors Corp. v. City of New York*, 501 F.2d 639 (2d Cir. 1974), he may appoint a special master to ascertain the facts, *Fisher Studio, Inc. v. Loew's Inc., supra*, or he may conduct the evidentiary hearing which was provided here. In addition to the affidavits submitted, Judge Costantino did examine the list of proposed questions submitted by appellants' counsel and he did permit counsel to interrupt the proceeding to suggest further questioning. Whether discovery is permissible is clearly within his discretion in any event, *Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87 (2d Cir., Nov. 28, 1975); *H. L. Moore Drug Exchange, Inc. v. Smith, Kline & French Laboratories*, 384 F.2d 97 (2d Cir. 1967), and that discretion should be rarely disturbed in a non-adversary proceeding involving attorney disqualification.

What is crucial here is that Judge Costantino accepted the representation of counsel who appeared before him that no additional clients had been obtained through the solicitation complained of and in fact none has appeared. He went further and determined that in any event the management firms who sent the circulars complained of had previous-

ly been clients of the Wien firm; that the law firms had no knowledge of the circulation of the letter or fee arrangement and did not authorize it; that the real estate agents had learned of the litigation from other sources; and that the firms' response to them was in answer to the requests of clients and not for the purpose of stirring up litigation. We see no reason to disturb his findings of fact and the legal principles he applied. We reiterate that the appellants have not even asked for reversal but merely for a remand for more vigorous inquiry permitting appellants to investigate the full scope of the circularization which they describe as a conspiracy.

We believe that counsel for the appellants here satisfied their professional obligation by properly calling the attention of the court to the seeming impropriety. The trial judge then had the obligation to insure that the cases pending before him were not tainted by the unethical conduct brought to his attention. He addressed himself to that task and conducted the evidentiary hearing described. We find no abuse of discretion at all but rather the exercise of prudence. The argument that others may be solicited is either a 'matter for another court when those plaintiffs surface or for the bar association. To conduct the broad investigation sought here, aside from its irrelevancy to the remedy of disqualification, in effect transforms the trial judge into the Grievance Committee of the bar association which is certainly not his function. *Ceramco, Inc. v. Lee Pharmaceuticals,* 510 F.2d 268, 271 (2d Cir. 1975).

A further concern here is the delay such a procedure would inflict upon the plaintiffs and the seven defendants who have not joined the motion to disqualify. This is a major antitrust case based upon the charge of a per se price fixing conspiracy. In addition to the interest of the plaintiffs in proceeding with counsel of their own choice, the defendants facing million-dollars claims are entitled to have the merits determined expeditiously. We are not charging the defendants with dilatory tactics, but we point out that the appeal and the remand sought inevitably have that effect.

We note in conclusion that we would be loath in any event to mandate a procedure which would cast counsel in the role of prosecutor in a proceeding to determine how opposing counsel obtained his clients. Litigation normally provokes the heat and friction which hardly qualify counsel for one of the parties to act as the impartial champion of the profession. There is always the possibility of the endless disputes predicted by Chief Judge Clark in *Fisher Studio, supra,* and the element of unfairness noted by Mr. Justice Field in *Randall v. Brigham, supra.* We believe that the extent of counsel's participation, if any, in the proceedings rests in the discretion of the trial judge. It was in our view wisely exercised in this case.

Affirmed.