**W. T. GRANT COMPANY, Plaintiff-Appellee,**

v.

**Mark S. HAINES, Defendant-Appellant,**

and

**John A. Christensen et al., Defendants.**

**No. 446, Docket 75–7385.**

United States Court of Appeals, Second Circuit.

Argued Jan. 7, 1976.

Decided March 9, 1976.

Herbert Robinson, New York City (Liebman, Eulau, Robinson & Perlman, Allan J. Kirschner, Ted M. Rosen, New York City, of counsel), for plaintiff-appellee.

Robert Layton, New York City (Layton & Sherman, Fredrick E. Sherman, New York City, of counsel), for defendant-appellant.

Before FEINBERG, MULLIGAN and ANDERSON, Circuit Judges.

MULLIGAN, Circuit Judge:

Once again this court is faced with an appeal from the denial by the district court of a motion to disqualify plaintiff's counsel. The underlying action was commenced in the Southern District of New York by the appellee W. T. Grant Company (Grant) against thirteen named defendants, including five individuals and eight corporations, to recover damages of approximately 25 million dollars and for injunctive relief. The jurisdiction of the court was invoked under section 4 of the Clayton Act (15 U.S.C. § 15) since the defendants were charged with violations of section 1 of the Sherman Act (15 U.S.C. § 1). They were also charged with violations of common law with jurisdiction therefor based on diversity of citizenship and pendent jurisdiction. In essence, the complaint charged the defendant employees, including the appellant here, Mark S. Haines (Haines), who had been Southern Regional Director of Grant's real estate department, with conspiring to restrict competition by limiting Grant's access to other shopping center developers and landlords; with violations of various New York Penal Law provisions and New York's antitrust law, the Donnelly Act (N.Y. General Business Law § 340); and with fraud.

These violations embraced alleged kickbacks and bribes to Grant's real estate employees. Grant is a well-known nationwide retailing company now in reorganization pursuant to Chapter XI of the Bankruptcy Act.[1] It had previously operated more than a thousand stores throughout the United States with annual sales in excess of one-and-a-half billion dollars. The defendant employees, including Haines, were entrusted with the responsibility of arranging leases for stores in shopping centers. The claims made in the complaint allege that the defendants engaged in the illicit practices which we have outlined above to the damage of Grant.

A number of motions to dismiss the complaint on various grounds were made by the defendants. The motion here relevant was made by Haines on March 26, 1975 in the Southern District of New York, for an order dismissing the action against him or, in the alternative, to disqualify the firm of Liebman, Eulau, Robinson & Perlman (Liebman firm) from further representing Grant; requiring the said firm to surrender all tapes, notes and records relating to their interrogation of Haines on January 31, 1975; and enjoining them from conveying or disclosing any such information to successor counsel. The ground for the motion was that the Liebman firm had violated Disciplinary Rule 7–104(A) of Canon 7 of the Code of Professional Responsibility.

On June 3, 1975, the United States District Court for the Southern District of New York (Judge Charles L. Brieant) entered an order which inter alia denied the motion for disqualification of the firm or for dismissal of the complaint as to Haines on the ground of a violation of the Code of Professional Responsibility. The court's opinion, dated May 8, 1975, is not yet officially reported. This appeal followed.

## I. FACTS

The president of Grant called a meeting of the company's Real Estate Review Board to be held at 9 a. m. on January 31, 1975 in the New York office. Instead of attending the meeting as anticipated, Haines and other employees were advised upon their arrival that the meeting was cancelled but that they were not to leave the office. At the same time that morning the Liebman firm filed with the clerk of the Southern District court the complaint in the underlying case, naming Haines and others as defendants. The firm on the same morning also filed affidavits permitting them, as outside counsel, to serve process upon the defendants under local Rule 12(a) of the Southern District court. They made application as well for preliminary injunctions against the defendants' transfer of assets together with orders of attachment.

Meantime, at the Grant office starting at about 9:30 a. m., various employees including Haines were separately interrogated. Haines was questioned by Allan J. Kirschner, Esq., a member of the Liebman firm, in the presence of Robert J. Kelly, Esq., vice president and general counsel of Grant. The district court found, and it is not disputed, that outside counsel disclosed their identity to Haines as well as the fact that they had been retained by Grant to look into certain of Grant's commercial dealings with shopping center developers and landlords. The court also found that Kelly was apparently known to Haines as Grant's house counsel. Members of the Liebman firm advised Haines that they were investigating claims of their client Grant, characterized as suggestions or charges of commercial bribery. Thus as the court below found there was no deception by the Liebman firm as to the character and nature of their representation. There is no question however that outside counsel did *not* then disclose that there was a lawsuit filed that morning naming Haines as a defendant. Moreover, the court below found that the calling of the real estate meeting was a sham and a ruse to obtain the presence of out-of-state residents for

---

1. On October 2, 1975, Grant filed a petition for reorganization pursuant to Chapter XI of the federal Bankruptcy Act. On February 12, 1976 Bankruptcy Judge Galgay signed an order requiring the company's liquidation within 60 days.

the purpose of interrogation and service of process. (The court accordingly did vacate personal service on Haines but a motion to reargue is sub judice, and an amended complaint has been served on Haines pursuant to Fed.R.Civ.P. 4 and the New York long-arm statute, N.Y. C.P.L.R. §§ 302, 313.)

The record reveals that before he was interrogated, Haines was asked if he had any objection to the tape recording of the proceedings. He stated that he had none. Although the court below found that five-and-one-half hours of questioning ensued, it is not clear that the questioning was continuous. At one point in the morning Haines voluntarily took a polygraph (or "lie detector") examination and in connection therewith signed a statement which provided that "No duress, coercion, promise of reward or promise of immunity was made to me. I have been told of my rights to consult a lawyer before taking this test." The date and time (January 31, 1975, at 10:50 a. m.) also appear next to Haines's signature.

A separate afternoon interrogation was completed at about 3:05 p. m., with Haines once again stating that he had no objection to its being taped. Haines then for the first time was advised that the lawsuit described had been initiated and he was served with a summons and complaint. He was then told to report to Grant's personnel vice-president, who informed Haines he was fired.

## II.  DISCUSSION

The appellant's principal argument here is that the dismissal of the complaint or disqualification of the firm is required by reason of the alleged violation of the American Bar Association's Code of Professional Responsibility, Disciplinary Rule 7–104(A), which is set forth in the margin,[2] and which was adopted by the New York State Bar Association as its own code of ethics effective January 1, 1970.

Subdivision (A)(1) of the Rule prohibits a lawyer from communicating on the subject of his representation of his client with a party he knows to be represented by another lawyer. The court below found that since Haines was not yet represented by counsel and since there was no deception either as to the Liebman representation of Grant or as to the nature of that representation, there was no violation of that subdivision of the Rule. Appellant argues that the Rule should not be so construed where litigation had in fact been commenced and the layman is not advised of this until after his interrogation is completed. As the court below noted, Informal Opinion No. 908 of the Standing Committee on Professional Ethics of the American Bar Association (Feb. 24, 1966) provides that it is not unethical behavior for a potential plaintiff's attorney to interview a potential defendant so long as the latter knows that the statement is being taken by the lawyer in his status as attorney for the plaintiff. Aside from the fact that Haines is not within the literal language of subdivision 1, we see no reason to extend its coverage here. Haines was hardly a stranger to Grant. He was its representative as Regional Director of its real estate department, he had been employed by it for about ten years, and he had received some $200,000 of its money as salary or bonus over that period. He was presumably a sophisticated businessman who was questioned on matters within his competence, which related to his stewardship, and which unquestionably involved his honesty and fiduciary obligations to his employer. He was neither a callow youth nor a befuddled widow. A reading of the transcript reveals his willingness to discuss freely the use of automobiles, entertainment opportunities and loans from those dealing

2.  DR 7–104.  Communicating With One of Adverse Interest
(A) During the course of his representation of a client a lawyer shall not:
(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.
(2) Give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interests of his client.

with Grant. We do not characterize the admissions or the discussion generally as necessarily inculpatory—the point is that Grant had the right to inquire into this matter even absent Haines's representation by counsel. Although fully aware of the serious nature of the charges, Haines chose to speak for the record without the benefit of counsel.

The cases relied upon by appellant, *Ceramco, Inc. v. Lee Pharmaceuticals*, 510 F.2d 268 (2d Cir. 1975), and *Zeller v. Bogue Electric Manufacturing Corp.*, 71 Civ. 5502 (S.D. N.Y. March 13, 1975) involved either a misrepresentation as to the adverse status of opposing counsel (*Ceramco*) or an interview with a party known to be represented by counsel (*Zeller*) and were properly distinguished on these grounds below.

■ Appellant further argues that even when a person is not represented by counsel, a lawyer is prohibited by subdivision (A)(2) of DR 7–104 from giving such person any advice other than the advice to secure counsel. This subdivision is not mentioned in the opinion below but we note that in his notice of motion of March 26, 1975, appellant relied upon "Disciplinary Rule 7–104(A)" so that the entire rule was presumably before the court. Moreover, subdivision (A)(2) was invoked in appellant's memorandum of law below. The question then arises what advice if any was given to Haines on January 31, 1975. While it is true that Haines was not advised of his right to counsel, except when he took the polygraph test, there is no such requirement in a civil action. See *O'Connor v. C.I.R.*, 412 F.2d 304, 313 (2d Cir. 1969), cert. denied, 397 U.S. 921, 90 S.Ct. 908, 25 L.Ed.2d 102 (1970). Moreover, Haines, an experienced, top-level employee of Grant's, was made fully aware of the nature of the interrogation and the retention by Grant of outside counsel which would reasonably indicate to him in our view that he was definitely a potential defendant.

■ Counsel encouraged interrogation by suggesting to Haines that candid answers to the inquiry might clear his name "if that [was] possible". But the court below found that "nothing Haines could have said or done [on that day] would have cleared his name" since Grant had possession of independent documentary evidence of the questioned transactions long before that date. The court below further found that Haines's taking the "lie detector" test was the result of misleading on Grant's attorney's part since it was implied that the results might be considered by Grant in determining whether or not to discharge Haines. In fact, that decision had apparently already been made. As we have noted, however, Haines did acknowledge in writing that he had been advised of his right to counsel before submitting to the "lie detector" test. More pertinently, Haines was asked for and did execute instruments giving Grant the authority to examine into his taxes, credit cards, department store charges, and financial documents at banks.

The question as to whether or not Haines's signing of those authorizations was the result of legal advice by opposing counsel within DR 7–104(A)(2) is not easily answered. Our reading of the transcript reveals that Haines was a most willing witness. He made known his desire to "clear the air" and his willingness to be helpful. Before he signed, outside counsel for Grant stated, "I think this would be the best way for you to help the company." He also said:

I also have prepared certain authorizations which I'd like you to sign which will permit us to make certain inquiries that we may not be able to check. I'll show them to you and if it's alright I'd like you to sign them.

Let me tell you what I have. I have a tax authorization, an authorization with regard to credit cards, department stores, Internal Revenue, financial documents and I'd like you to sign them.

We observe that outside counsel explained precisely what the authorizations contained, that it would permit inquiries which otherwise Grant might not be able to check, and further that if it was "alright" with Haines, counsel would like Haines to sign. Whether

this constitutes advice within the Rule and whether Haines acted on that advice or because of his own sense of obligation to Grant is a close question.[3] We cannot escape the fact, however, that outside counsel knew that Haines was about to be served and knew that he could not clear his name or prevent his discharge. This was found below and the conduct of counsel was properly characterized there as "somewhat overbearing" and "lack[ing] the sensitivity which members of the bar should show in dealing with laymen." We agree that the procedures adopted here were at least inappropriate and certainly not to be encouraged.

■ However, the fact of professional misconduct is not necessarily determinative of the issue before us. The question is whether or not that conduct should merit the sanction sought, dismissal of the complaint or disqualification of counsel from continuing representation of Grant. The court below, despite critical evaluation of the conduct of counsel, nonetheless refused to impose the sanctions sought. We have consistently held that the remedy of disqualification rests in the discretion of the district court and its determination will only be upset upon a showing of abuse. *Lefrak v. Arabian American Oil Co.*, 527 F.2d 1136, 1140 (2d Cir. 1975); *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975).

■ Though we find no violation of DR 7–104(A)(1), the question remains: if we assume a violation of DR 7–104(A)(2) does it follow that dismissal or disqualification is appropriate? We can find no precedent for dismissal of the complaint; and the mere fact that Grant retained the Liebman firm and that house counsel was present at the time of the interrogation, cannot reasonably

---

**3.** Certain recent ethics opinions have dealt with the question of whether it is permissible for one party's attorney to request the opposing party, not himself represented by counsel, to sign certain waivers. In Informal Opinion 1140, ABA Comm. on Ethics and Professional Responsibility (Jan. 20, 1970), it was held to be improper under DR 7–104(A)(2) when the form "waives the issuance of and service of summons, waives any right to contest the jurisdiction or venue of the court and agrees that the case be submitted to the court in term time or in vacation and without further notice to the defendant. The form also waives notice to take depositions and agrees that depositions may be taken at any time without notice and without formality." However, a less sweeping waiver was found permissible in Informal Opinion 1269 of the same committee (May 22, 1973); there, the unrepresented defendant was asked to sign only a "waiver of the issuance and service of summons and the entry of an appearance." The committee held this to be proper under the Rule "[a]s long as these documents are not accompanied by or coupled with the giving of any advice to the defendant . . . ." While the parallel is hardly exact, it would seem that Haines's being asked to sign the authorization at bar here fall more under the latter opinion than under the former.

More generally, the sort of "advice" prohibited by ethical considerations seems to encompass advice as to the *law*, which was not present here. See, e. g., Formal Opinion 102, ABA Comm. on Professional Ethics (Dec. 15, 1933) (*Held*: "It is not improper for an attorney representing an employer to draw up set-

tlement papers for workman's compensation settlements when the employee is not represented by counsel as long as the attorney does not advise or mislead the employee *as to the law* . . . ." (emphasis added). The latter clause was elaborated upon in the opinion as follows: ". . . the attorney in drafting the settlement papers should refrain from advising the servant about the law, and particularly must avoid misleading the servant concerning the law or the facts."); Formal Opinion 58 (Dec. 14, 1931) (attorney retained by client seeking a divorce may not ethically confer with the unrepresented adverse party when such entails giving the adverse party "legal advice" in an attempt to secure the latter's consent to what will, in effect, be an agreed action. Instead, attorney should merely tell the adverse party of the proposed action, and recommend that he or she should consult independent counsel); Opinion No. 358, N.Y. St. Bar Ass'n Comm. on Professional Ethics (Sept. 10, 1974) (reproduced in 46 N.Y. St. B.J. 625 (1974) (attorney for personal-injury plaintiff sent copy of letter to unrepresented proposed defendant advising that failure to settle within latter's insurance policy limits would be considered bad faith, thus exposing defendant to judgment in excess of policy limits. *Held*: This is improper as the giving of "legal advice" in violation of DR 7–104(A)(2)). Alternatively, it is also improper for one party's attorney to advise the unrepresented other party as to the course of conduct the attorney thinks the latter should pursue, e. g., ABA Informal Opinion 1034 (May 30, 1968); this also did not occur here.

justify that severe penalty here. The sins of counsel should not be visited upon his client so as to vitiate the latter's cause of action. Moreover, this court has squarely held that a violation of professional ethics does not in any event automatically result in disqualification of counsel. In *Fisher Studio, Inc. v. Loew's, Inc.*, 232 F.2d 199 (2d Cir.), cert. denied, 352 U.S. 836, 77 S.Ct. 56, 1 L.Ed.2d 55 (1956), counsel for the plaintiffs in an antitrust action was found to have solicited his clients in violation of then Canons 27 and 28 of the Canons of Professional Ethics of the American Bar Association. Moreover, the action there was brought against fifteen defendants, nine of whom had been his former clients. It was also found that plaintiffs' counsel had improperly used confidential information obtained from his prior representations. Nonetheless, this court permitted the action to proceed without disqualification against the six non-client defendants despite the flagrant solicitation by plaintiffs' counsel. Chief Judge Clark, writing for the court, held:

> Solicitation may well merit appropriate discipline; but it appears quite incongruous that disqualification should be the remedy, separating the client from his counsel without substitution of other protection for the client's interest. And the possibilities of endless disputes at the inception of lawsuits as to how the business was obtained are not to be overlooked.

The interrogation of Haines in the absence of counsel violated no canon or disciplinary rule as we have indicated. The transcript reveals not only his knowledge of the identity of the Liebman firm and the nature of the inquiry but also his own willingness to cooperate even though he was obviously a target of the investigation. There was no misrepresentation by outside counsel of their adversary position and no conflict of interest. The transcript reveals that they were already independently in possession of documentary evidence which provided the basis of the questions posed as well as the foundation for the complaint which had been filed earlier that morning. While Haines did sign authorizations which would presumably facilitate further leads or uncover assets which could be attached or levied upon in the event a judgment against him was obtained, the injury he might suffer is speculative at best at this point. The issue then is whether under these circumstances a court should disqualify counsel.

As Judge Clark suggested in *Fisher* and as we have recently noted in *Lefrak*, we cannot lightly separate Grant from the counsel of its choice. Counsel here has been engaged for well over a year in the investigation and preparation of this lawsuit. Disqualification of present counsel and the substitution of a new attorney unfamiliar with the facts and the law will inevitably result in further harmful delay and expense to Grant. The transcript of the Haines interview is a public record printed in the appendix of this appeal. While disqualification is clearly punitive insofar as Grant and its outside counsel are concerned, its benefit to Haines is indeed questionable. The business of the court is to dispose of litigation and not to act as a general overseer of the ethics of those who practice here unless the questioned behavior taints the trial of the cause before it. *Lefrak v. Arabian American Oil Co., supra*, 527 F.2d at 1141. Plaintiff has failed to establish that taint here in our judgment. If the Liebman firm is guilty of professional misconduct, as to which we express no view, the appropriate forum is the Grievance Committee of the bar association. Whatever sanction if any that is imposed there will not affect the rights of a plaintiff long since embarked upon serious litigation.

As Chief Judge Clark predicted in *Fisher* and as we found in *Lefrak*, the possibilities of endless disputes at the inception of lawsuits on the basis of allegations of professional misconduct cannot be overlooked by the court. The canons of ethics are properly comprehensive and the heat of litigation easily provokes claims of misconduct. Since this court has reversed our prior rule and held that denials of motions to disqualify counsel are directly appealable

to the court, *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 496 F.2d 800 (2d Cir. 1974) (en banc) such motions and appeals have proliferated.[4] The attention of the district court is thereby diverted to a separate issue and the appeal results in further delay and diversion. Here for example Judge Brieant has continued the injunction of the deposition of Haines pending the outcome of this matter. We do not suggest that the present appeal was taken for dilatory purposes nor was it by any means frivolous. However the rationale of our decision in *Silver Chrysler* rested upon the narrow exception to the general non-appealability of interlocutory orders established in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., supra*, 496 F.2d at 805–06. That in turn requires that the issue appealed must be shown to taint the underlying trial. Appellant has failed to establish this. Under all the circumstances stated, and balancing the equities involved, we find no abuse of discretion in the denial of the motion by the district court.[5]

Appellant has also appealed from that part of the order of June 3, 1975 which continued in effect orders of attachment against property of Haines in Atlanta, Georgia. However, an order of attachment (or an order continuing one) is not appealable until a final judgment is entered, *Rosenfeldt v. Comprehensive Accounting Service Corp.*, 514 F.2d 607, 610 (7th Cir. 1975); *Financial Services, Inc. v. Ferrandina*, 474 F.2d 743, 745 (2d Cir. 1973) (denial of motion to vacate attachment not appealable under *Cohen, supra*). The bases of jurisdiction for the order of attachment relied upon by Grant are Fed.R.Civ.P. 64 and section 6211 of the New York C.P.L.R. While this order is not appealable, since the matter is now again before Judge Brieant we suggest that it be argued before him since it does not appear from the record that the appellant's arguments were briefed below.

Affirmed.

---

4. See, e. g., *International Electronics Corp. v. Flanzer*, 527 F.2d 1288 (2d Cir. 1975); *Lefrak v. Arabian American Oil Co., supra*, 527 F.2d at 1149 & n. 3.

5. Appellant has also urged that a partner in the Liebman firm gave a press interview to the New York Times which praised the firm and its expertise in the field of business frauds, and mentioned the instant suit. However, the article does not name any of the defendants in this case. We see no possible taint of the pending trial and if the interview violates any canon, it clearly is a matter for the bar association and not the court.