In re OSAGE EXPLORATION COMPANY, Debtor.

FRED BRAUN CORP. PROFIT SHARING TRUST, Otakar Mach, Renate Mach, Frederick A. Terry, Jr., as Trustee U/W E.R. Mitchell F/B/O Craig K. Mitchell and Rita M. Cushman, Plaintiffs,

v.

Thomas C. SMITH, Nora A. Smith, Walter A. Wood, Renee M. Wood and Darlene Francis, Defendants.

No. 83 Civ. 6613 (JFK).

United States District Court, S.D. New York.

Dec. 4, 1984.

James J. Higginson, Appleton, Rice & Perrin, New York City, for plaintiffs.

Harold F. McGuire, Jr., McGuire & Tiernan, New York City, for defendants Walter and Renee Wood.

## OPINION AND ORDER

KEENAN, District Judge.

Plaintiffs have made two motions to amend their complaint, both in bankruptcy court. Prior to a decision on these motions, the case was remanded to this Court. 39 B.R. 966. Issue has not yet been joined in

this case with respect to one defendant, but it has for the three other defendants.

On June 10, 1983, Osage Exploration Company ("Osage") filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. Osage is engaged in the exploration and development of oil and gas products.

The original complaint alleged that the defendants entered into a conspiracy to induce plaintiffs and other investors to purchase units in the oil and drilling programs of Osage by fraudulent misrepresentations and charged that the defendants thereby violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder, the General Business Law of the State of New York, the Oklahoma Securities Act and the common law.

By Order to Show Cause, dated October 6, 1983, plaintiffs brought on a motion for leave to file a First Amendment Complaint to: (a) add Hamilton Robinson, Jr., as a new party plaintiff in the action; (b) add a new cause of action alleging that defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (c) allege that an additional offering memorandum of Osage contained misrepresentations and failed to state material facts; and (d) delete the allegation that Osage was a co-conspirator. This motion is currently *sub judice* in this court.

In their motion for leave to file a Second Amended Complaint, plaintiffs seek to: (a) add seven additional parties plaintiff; (b) further specify the citizenship and residency of the parties; (c) add a new co-conspirator; and (d) delete immaterial allegations concerning Osage's 1979 drilling program, known as the Hall Program.

Defendants challenge only two of the proposed amendments: the addition of a civil claim under RICO and the addition of seven more plaintiffs. For the reasons stated below, plaintiffs' motions to amend their complaint are granted in all respects except for the addition of a civil RICO claim.

## DISCUSSION

■ Rule 15(a) of the Federal Rules of Civil Procedure provides that "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *Accord Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Leave to amend should be freely granted in the absence of any undue delay or prejudice to the opposing party. *Id.; Clay v. Martin*, 509 F.2d 109, 113 (2d Cir.1975); *see* 6 Wright & Miller, *Federal Practice & Procedure:* Civil § 1484 (1971 ed.).

### 1. *Amending Complaint to Add Additional Plaintiffs*

The first disputed amendment involves plaintiffs' request to add seven more parties as plaintiffs. Plaintiffs contend that the claims of the new parties arise out of the same transactions and occurrences as those of the original plaintiffs and involve common questions of law and fact. As a result, granting leave to amend avoids a proliferation of multiplicitous lawsuits involving the same issues.

Defendants, on the other hand, argue that plaintiffs' counsel has directly and indirectly solicited additional plaintiffs to participate in this action from among the investors in the oil drilling programs of Osage. Defendants' counsel claims that several investors told his clients that they had been approached by plaintiffs in an effort to convince them to join as plaintiffs (Wentzel Aff. ¶ 2). Defendants' counsel also claims that plaintiffs' counsel has personally solicited additional parties to act as plaintiffs (Wentzel Aff. ¶ 3). Another person, Edward Presley, also claims to have been contacted by persons solicited by plaintiffs' counsel (Presley Aff. ¶ 1–2). Defendants maintain that such solicitation, allegedly done in contravention of § 479 of the New York Judiciary Law and Disciplinary Rules 2–103 and 2–104 of the Code of Professional Responsibility adopted by the New York State Bar Association, warrants denial of plaintiffs' motion to add party-

plaintiffs. To allow such an amendment, defendants declare, would unfairly prejudice them and "have the effect of placing this Court's imprimatur on the specific improprieties of plaintiffs' counsel" (Memorandum in Opposition at 3). The Court disagrees.

■ At the outset, the Court notes that it is not improper for the plaintiffs themselves to solicit persons to join them in a lawsuit. The sections of the Judiciary Law and Code of Professional Responsibility relied on by defendants apply only to lawyers.

■ This Court is aware of its responsibility to supervise the members of its bar. *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir.1975). The method of conducting the inquiry is within the discretion of the Court charged with this responsibility. *Lefrak v. Arabian American Oil Co.*, 527 F.2d 1136, 1140 (2d Cir.1975). The Second Circuit has endorsed judicial inquiries made on the basis of oral arguments and affidavits, *id.*, and this is the method most appropriate in this case.

■ The affidavits connecting plaintiffs' counsel to improper solicitation are third-hand in the case of Mr. Wentzel and second-hand in the case of Mr. Presley. It is difficult to imagine why defendants, in making these serious charges, did not produce affidavits of persons with personal knowledge of plaintiffs' counsel's alleged solicitation. Admittedly, those persons who consented to join as plaintiffs would probably not submit a supporting affidavit. But Mr. Wentzel's affidavit refers, for example, to a person who says he is "sick and tired of being pestered" by plaintiffs' counsel (Wentzel Aff. ¶ 4). Certainly, the affidavit of a person with personal knowledge of the alleged wrongdoing should have been submitted. At oral argument, defendants' counsel failed to explain the absence of such evidence.

Plaintiffs' counsel, in his affidavit, has denied soliciting proposed additional plaintiffs (Higginson Aff. ¶ 10). At oral argument, he reaffirmed his innocence and also denied directing his clients to make any solicitations. In the face of defense counsel's sworn declarations of innocence, this Court cannot find wrongdoing on the basis of the hearsay evidence submitted by plaintiffs.

■ Defendants argue that if the Court doubts that plaintiffs' counsel has made solicitations, defendants should be permitted the opportunity to examine each of the proposed plaintiffs by oral deposition to determine the facts under oath. Judge Mulligan, in *Lefrak*, 527 F.2d at 1141, however, articulated the problems with allowing such discovery:

> We note in conclusion that we would be loathe in any event to mandate a procedure which would cast counsel in the role of prosecutor in a proceeding to determine how opposing counsel obtained his clients. Litigation normally provokes the heat and friction which hardly qualifies counsel for one of the parties to act as the impartial champion of the profession.

■ Defendants' also seek to disqualify plaintiffs' counsel for his alleged wrongful conduct. Obviously, since the Court is not convinced plaintiffs' counsel engaged in improper conduct, disqualification would be inappropriate. The Court further notes, however, that even if solicitation is proven, it does not necessarily warrant disqualification of counsel. *Lefrak*, 527 F.2d at 1141. In *Fisher Studio, Inc. v. Loew's, Inc.*, 232 F.2d 199 (2d Cir.), *cert. denied*, 352 U.S. 836, 77 S.Ct. 56, 1 L.Ed.2d 55 (1956), counsel for plaintiffs was found to be not only soliciting clients but also exploiting confidential information in connection with an antitrust action against fifteen motion picture companies. Nonetheless, the court held:

> We did not think that solicitation shown here may form a separate ground for disqualification and thus justify such action as to the six non-client defendants. Solicitation may well merit appropriate discipline; but it appears quite incongruous that disqualification should be the remedy, separating the client from his

counsel without substitution of other protection for the client's interest. And the possibilities of endless disputes at the inception of lawsuits as to how the business was obtained are not to be overlooked.

232 F.2d at 204.

Unquestionably, the "solicitation of business by a lawyer through direct, in-person communications with a prospective client has long been viewed as inconsistent with the profession's ideal of the attorney client relationship and as posing a significant potential for harm to the prospective client." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 454 & n. 11, 98 S.Ct. 1912, 1917 & n. 11, 56 L.Ed.2d 444 (1978). Disqualification of counsel, however, is not necessarily the proper means of dealing with this problem. This court will not be transformed "into the grievance committee of the Bar Association which is certainly not [its] function." *Lefrak*, 527 F.2d at 1141. Nor, by disqualifying counsel, is the Court willing to unduly delay the trial and needlessly deprive plaintiffs of their chosen counsel. *Id.* In granting leave to amend, the Court is not condoning or placing its "imprimatur" on improper activity by lawyers.

 Traditionally, as the Court has stated, the improper conduct of counsel has not been a usual ground for denying leave to amend a complaint.* Generally, leave will be denied if the opposing party will be prejudiced by the amendment. Wright & Miller, *supra*, § 1484, at 428.

 Defendants contend that they are prejudiced by being forced to defend this action against plaintiffs who would not be involved if leave to amend is not granted. Under this reasoning, any defendant is prejudiced by being sued. But that is no reason to dismiss a plaintiffs' complaint. In *Adair v. Hunt International Resources Corp.*, 526 F.Supp. 736, 739 (N.D.Ill.1981), the court allowed amendment of a complaint to add claims of 675 new plaintiffs. The fact that this might increase defend-

ants' exposure to potential liability was not the type of prejudice that warranted denial of leave to amend the complaint. *Id.* at 739–740; *accord* Wright & Miller, *supra*, § 1487, at 431.

 The type of prejudice that warrants denial of leave to amend a complaint is usually such that it puts a defendant at an unfair disadvantage. For example, if a plaintiff delays without cause in seeking an amendment and attempts to add a claim on the eve of trial that defendant is not prepared to defend against, the amendment will probably not be permitted. *See Nevels v. Ford Motor Co.*, 439 F.2d 251, 257 (5th Cir.1971); Wright & Miller, *supra*, § 1488, at 440–41. But in this case issue has not even been joined as to all defendants and the claims of the proposed additional plaintiffs involve questions of law and fact common to each other and common to those asserted by the original plaintiffs. Rather than being prejudiced by this amendment, it may protect defendants from being subject to multiple lawsuits arising from the same transaction. In so doing, it also serves the interests of judicial economy. Granting leave in this case, the Court notes, is consistent with Rule 21 of the FRCP which authorizes the addition of parties where it is just and will not result in prejudice. 7 Wright & Miller, *supra*, § 1681.

Accordingly, plaintiffs' motion for leave to amend their complaint to add additional party-plaintiffs is granted.

### 2. *Amending Complaint to Add a Civil RICO Claim*

 Plaintiffs seek to amend their complaint to add a civil claim under RICO. Under *Sedima v. Imrex Co.*, 741 F.2d 482 (2d Cir.1984), the Second Circuit ruled that prior to the institution of a civil RICO claim there must be criminal convictions of the defendants for the alleged predicate acts and that a distinct racketeering injury must be alleged in the complaint. *Accord Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d

---

* The Court probably has the discretion to take such action, *see* Wright & Miller, *supra*, § 1484, even though we do not deem it proper in this case.

**50**

Cir.1984); *Furman v. Cirrito,* 741 F.2d 524 (2d Cir.1984). In this case, defendants have no prior criminal convictions for predicate acts or any other acts. Nor does plaintiffs' complaint allege a distinct racketeering injury. Although leave to amend is generally freely granted, it is pointless to permit a claim that is legally insufficient on its face. *See S.S. Silberblatt, Inc. v. East Harlem Pilot Project,* 608 F.2d 28, 42 (2d Cir.1979); *Freeman v. Marine Midland Bank,* 494 F.2d 1334, 1338 (2d Cir.1974); Wright & Miller, *supra,* § 1487, at 432–33.

■ Plaintiffs, apparently conceding the insufficiency of their claim under *Sedima,* argues that *Sedima* was wrongly decided and is likely to be reversed by the Supreme Court in the near future. As a result, plaintiffs contend, this Court should allow the addition of this RICO claim pending ultimate resolution by the Supreme Court (Plaintiffs' Reply Memorandum at 2–3). This Court finds *Sedima* to be controlling. It is the settled law of the Second Circuit and cannot be disregarded. Plaintiffs' proposed RICO claim is legally insufficient on its face.

Accordingly, plaintiffs' motion to amend its complaint to add a RICO claim is denied.

### CONCLUSION

Plaintiffs' motions to file a first and second amended complaint are granted in all respects except leave to add a RICO claim is denied.

SO ORDERED.