**FRONTLINE COMMUNICATIONS INTERNATIONAL, INC., ACME Consolidated, Inc., Caribe Direct, Inc., Emkay Holding Management, Inc., Bellrose GEM Corporation and International Telnet, Inc., Plaintiffs,**

v.

**SPRINT COMMUNICATIONS COMPANY L.P., Defendant and Third Party Plaintiff,**

v.

**Melvin Cooper, David Bersson, Norman Bersson, Earl G. Thompson, Erik Gardiner, and John Millwood Third Party Defendants.**

**No. 01 Civ. 8890(MGC).**

United States District Court, S.D. New York.

Nov. 21, 2002.

Anderson Kill & Olick, P.C., New York, NY, By: Steven Cooper, Jordan W. Siev, for Defendant.

Greenfield Stein & Senior, LLP, New York, NY, By: Paul T. Shoemaker, John A. Kornfeld, for Third Party Defendant John Millwood.

## OPINION

CEDARBAUM, District Judge.

This consolidated action originally involved a contract dispute between the plaintiff telecommunications companies and defendant Sprint Communications Company, L.P. ("Sprint"). Plaintiffs alleged that Sprint was attempting to add a surcharge to their bill despite the fact that their contracts contained fixed rates. Over the course of the litigation, Sprint brought claims against several third-party defendants, mostly officers of the plaintiff companies, alleging that they had fraudulently induced Sprint to enter into the contracts. Specifically, Sprint alleged that plaintiff companies concealed the relation-

ship among them and hid the fact that they were resellers of telecommunications services.

On February 14, 2002, Sprint filed an amended third-party complaint and impleaded its former employee, John Millwood. For the first time, Sprint alleged that the employee who had signed the contracts at issue on its behalf had improperly assisted plaintiff companies to obtain lower rates by concealing the nature of their businesses and the relationship among them. The amended third-party complaint alleges that Millwood assisted plaintiffs in return for bribes and the promise of higher commissions.

Plaintiffs and all third party defendants except Millwood have settled with Sprint. The only claims now remaining in the case are Sprint's third-party claims against Millwood. Millwood has counterclaimed for discrimination, alleging that Sprint asserted third-party claims against him in retaliation for his complaint to the Equal Employment Opportunity Commission ("EEOC").

Millwood has now moved to disqualify the firm of Anderson Kill & Olick, P.C. ("AKO") from representing Sprint in this action. Millwood asserts that AKO represented or purported to represent him in this litigation prior to the filing of the third-party claims against him, and that AKO is now barred from suing its former client. For the reasons that follow, Millwood's motion is denied.

## BACKGROUND

On June 3, 2002, I held an evidentiary hearing on the motion. Jordan Siev and Steven Cooper of AKO and Millwood testified at the hearing. Most of the testimony concerned the nature of Siev's relationship with Millwood prior to November 26, 2001 when plaintiffs last deposed Millwood. After hearing and observing the three witnesses, evaluating their credibility and weighing the evidence, I make the following findings of fact.

In early October, Lee Lauridsen, an inhouse attorney for Sprint, spoke to Millwood concerning Frontline's lawsuit against Sprint. On October 11, 2001, Millwood participated in a telephone conference with Lauridsen and Siev. During that conference, Lauridsen introduced Siev to Millwood as Sprint's outside counsel. The telephone call was essentially a "fact-finding" conference in which Siev asked various questions regarding the contracts and Millwood's contacts with the plaintiffs. A similar, more detailed fact-finding telephone conference took place between Millwood and Siev on October 19. On both occasions, Millwood stated that the plaintiffs never told him that they were resellers. Millwood also stated on both occasions that he understood the rates in the contracts to be fixed.

Plaintiffs first deposed Millwood on October 23. On the morning of the 23rd, Millwood went to Siev's office to prepare for the deposition. Siev told him "just to relax, it's no big deal." He told him that the plaintiffs would ask a lot of questions but that Siev was going to prepare him for it. Siev also stated that he would be with Millwood during the deposition. During preparation, Millwood told Siev that he had never been deposed before, after which Siev explained to him "some particulars of the deposition." As part of the preparation, Siev also showed Millwood a video about the deposition process, which made several references to "your lawyer."

At the deposition, the following exchange took place:

Q: Good afternoon, Mr. Millwood. Would you please state your full name?

A. John Millwood.

Q: And you are accompanied here with your attorney, Mr. Jordan Siev; is that correct?

A: Correct.

On October 25, 2001, Caribe and Bellrose, two of the plaintiffs in this consolidated action, filed a complaint in the New York County Supreme Court. The complaint named both Sprint and Millwood as defendants. On October 26, 2001, Sprint removed the Caribe and Bellrose action to this court. In connection with the removal, Siev submitted an affidavit in support of subject matter jurisdiction. Siev stated in the affidavit that "I am a member of the Firm of Anderson Kill & Olick, P.C., counsel for defendants Sprint Communications Company, L.P. ("Sprint") and John Millwood ("Millwood")...." Neither Siev nor anyone else at AKO informed Millwood either of the removal of the action or of the affidavit. Siev filed the affidavit on behalf of Millwood solely for the purpose of getting him dismissed from the case. I granted AKO's motion to dismiss Millwood on the ground that he was fraudulently joined for the sole purpose of defeating diversity jurisdiction.

On November 1, 2001, Steven Cooper had a conversation with an in-house attorney for Sprint concerning allegations made by Kim Henry, a former employee of Sprint. Cooper was told that Henry had filed a claim of discrimination against Sprint. On November 2, 2001, Cooper received a copy of a letter sent to Sprint by Henry's lawyer. The letter, dated August 30, 2001, summarized Henry's claims against Sprint, and also alleged certain conduct by Millwood:

In or about late February or early March 2001, Henry discovered that her Branch Manager, John Millwood, unlawfully falsified sales and company records. More specifically, two (2) of Henry's accounts, Frontline Communications ("Frontline") [one of the plaintiff companies] and Skoland/IX2 ("Skoland") were ordering additional service, i.e. add-on accounts. Millwood was avoiding paying Henry commission fees she was entitled to by creating fictitious company names and documents and setting up add-on accounts under these shill companies.

. . . .

In order to avoid paying commissions to Henry, Millwood used fictitious corporate names, which were shill companies, to establish new accounts. Although the company names were different than Frontline, the service was actually being provided to Frontline.

Cooper testified that Sprint's law department told him that Sprint had determined Henry's allegations not to be credible. Cooper was told that Millwood had filed a "corrective action" against Henry prior to her termination, and that Henry was terminated for credit card abuse. Cooper did not credit Henry's claims and did not discuss them with Millwood.

On November 7, Sprint gave notice to Millwood that he would be terminated. Millwood continued to work at Sprint until November 16. On November 15, Millwood had a meeting with two employees of Sprint's "in-house corporate security," who told him that two other individuals, Baptiste and Louis Santana, said that they had told Millwood that Frontline was a reseller. The corporate security employees also questioned Millwood regarding his handling of the Frontline accounts. Millwood told them that "you sound like I should have a lawyer." They told Millwood that he only needed a lawyer if he had something to hide, to which Millwood responded that he had nothing to hide and that he therefore did not require an attorney.

On November 16 or 17, Cooper was approached by a "confidential informant." This informant told Cooper that there

were "at least half a dozen people at Sprint who were involved with these plaintiffs, some of whom may have been paid off by them." The informant mentioned Millwood as one of the individuals at Sprint who was involved with the plaintiffs, but did not tell Cooper any specific acts of wrongdoing by Millwood.

Siev next communicated with Millwood on November 20, the date of Millwood's second deposition. Siev and Millwood discussed how Millwood was introduced to the plaintiffs and the circumstances surrounding the signing of the contracts. During the discussion, Millwood told Siev that Sprint had terminated his employment. Siev had already learned of this fact approximately a week or two prior to November 20. Siev also knew before the deposition that Sprint was conducting an internal investigation with regard to the plaintiffs, and that Millwood had been interviewed as part of that investigation.

During his discussion with Siev, Millwood communicated his concerns that the corporate security people "had questioned me so, you know, pretty much like interrogation." According to Millwood, Siev responded "don't worry about it" and stated that "I'm right there for you, we're a team, so ... I'm not sure why they even did that."

At the deposition on November 20, Millwood testified that he had been fired by Sprint. Frontline's attorney, Joel Van Over, attempted to question Millwood about the circumstances surrounding his termination. Siev objected to the extent that the questioning touched upon Sprint's investigation of the plaintiffs in this case, stating that the results of that investigation were protected by the work-product privilege. The following exchange took place:

MR. TAGUE [attorney for International Telnet, a former plaintiff in this case]: ... I think it's problematic that now he's continuing with this deposition and you are counseling him and advising him that he cannot answer specific questions with respect to conversations he had not with Sprint lawyers but with his immediate superior, Ms. Jordan. So I think that's problematic.

MR. SIEV: The work product rules are very clear that it does not have to be a lawyer that does the communicating, and the privilege is not—and the privilege for work product and attorney-client are not Mr. Millwood's, they're Sprint's, and I'm asserting them on behalf of Sprint.

We can sit here and debate it for an hour or call the Judge, I'm happy to do either one, or you can continue questioning.

MS. VAN OVER: All right.

Q. Mr. Millwood, does Mr. Siev here represent you personally?

MR. SIEV: Objection to the form.

A. No.

Immediately following that exchange, Millwood testified that he received an email from Sprint's Compensation department regarding commissions for two of his accounts, the Touchstone and Eiffel accounts. Millwood testified that he interpreted the email as stating that whether he received any commission for these accounts depended on the outcome of this action. Van Over then stated that "I think you two have a blatant conflict of interest. I don't think you should be sitting here representing this witness." Upon being asked by Siev for the reason for her statement, she responded: "The witness has just testified that he received an e-mail from Sprint saying that his compensation is dependent on the outcome of this litigation in some fashion. That puts you into a conflict of interest." Siev testified credibly

at the hearing that he did not know of the existence of this email prior to the deposition.

During a subsequent break, Siev and Millwood had a discussion off the record. Siev explained to Millwood that AKO did not believe a conflict existed, but that because it was a "serious matter," Millwood should not proceed with the deposition but should instead obtain separate counsel. Following that break, Siev and Millwood made the following statements:

MR. SIEV: As I have just told counsel off the record, Ms. Van Over has made a very serious allegation during the course of the brief proceedings we've had here today that she perceives that there's a conflict of interest.

While neither I nor my firm nor Sprint believe that is the case, rather than moving forward, we advised Mr. Millwood that we don't believe there is a conflict, yet the Plaintiffs have raised that possibility and as such he should obtain independent counsel of his choosing as opposed to potentially having any of his rights compromised; and Mr. Millwood is certainly free to speak for himself, but he has advised me as he has counsel here off the record that he seeks to do that and seeks to terminate the deposition.

Mr. Millwood, do you want to state your decision for the record?

THE WITNESS: I mean, I was informed that it would be in my best interest to seek counsel before I answer any more questions.

I don't necessarily object to answering any questions, I just don't want to do anything that is really not in the best interest of myself.

Van Over then asked Millwood whether this was the first time anyone had told him he had a right to consult independent counsel. Siev instructed Millwood not to answer a question because of "potential attorney-client implications for Sprint." Van Over and Siev then had this exchange:

MS. VAN OVER: Is it your position you have an attorney-client relationship with Mr. Millwood?

MR. SIEV: As we sit here right this second?

MS. VAN OVER: Yes, now.

MR. SIEV: Previously?

MS. VAN OVER: Now, right now.

MR. SIEV: As we sit here right now you've raised the possibility of a conflict; so given that, I can't move forward and say that I represent him without him seeking independent counsel.

MS. VAN OVER: It seems to me if you have never before right now told him that he is entitled to get independent counsel or you are telling him that he can't answer that question, that has nothing do [sic] with privilege, that has to do with Mr. Millwood's rights as an individual separate and apart from Sprint, and I'm entitled to an answer to that question; and I would like to call the Judge now if you are instructing him not to answer.

Millwood and Siev briefly conferred off the record, after which Siev continued to assert attorney-client privilege "on behalf of the company." Millwood stated that he would continue to answer questions at the deposition because "I'd rather deal with whatever can be dealt with right now."

The final deposition of Mr. Millwood took place on November 26. At that deposition, Millwood testified that Siev was not his personal lawyer. Following the deposition, Siev did not have any further conversations with Millwood. In January 2002, Millwood obtained independent counsel. On February 14, Sprint filed an answer,

amended counterclaims, and amended third-party claims naming Millwood as a third-party defendant. The claims asserted against Millwood are for misrepresentation, conspiracy to defraud, negligent misrepresentation, negligence, and breach of fiduciary duty. The factual allegations in paragraph 57 of the third-party complaint are similar to the allegations contained in Kim Henry's earlier letter:

> Millwood ... created false documents and records, including contracts, that were designed for the purpose of creating the false appearance that the Plaintiffs were and are independent companies with their own independent business plans and desire to purchase services from Sprint as general business customers. In fact ... Plaintiffs and other affiliates had no independent need or desire to purchase traffic from Sprint other than to serve as hidden "fronts" for Frontline.

## DISCUSSION

■ Millwood argues that AKO should be disqualified from continuing to represent Sprint in this litigation because AKO attorneys failed to explain the risks of joint representation to Millwood or advise him to obtain independent counsel after they became aware of a conflict of interest between Millwood and Sprint. Even if AKO violated its ethical obligations to Millwood, that conduct did not prejudice Millwood's defense in this case, and therefore does not require disqualification.

The evidence presented by the parties demonstrates that as early as November 2, 2001, AKO possessed information of a possible conflict of interest between Sprint and Millwood. The Kim Henry letter contained allegations that Millwood had disguised the nature of the relationship between Frontline and Bellrose, two of the plaintiff companies. Henry also alleged that service supposedly going to Bellrose was in fact being provided to Frontline. Although Sprint had not yet taken an adversarial position against Millwood, the parties' filings demonstrated that a key issue in the case would be the circumstances in which the plaintiffs obtained such favorable contractual rates. When Sprint eventually filed its third-party claims against Millwood in February 2002, its allegations were remarkably similar to Henry's allegations.

Furthermore, Henry's allegations were bolstered by conversations between Siev and a confidential informant on November 16 or 17 of 2001. This confidential informant told Siev that Millwood was one of a number of Sprint employees who were possibly being "paid off" by the plaintiff companies. AKO did not inform Millwood of Henry's letter or of the confidential informant's allegations. Nor did AKO inform Millwood of the implications of joint representation prior to the November 20 deposition. Millwood argues that once it possessed information of a possible conflict of interest, AKO had an ethical obligation to inform him of the circumstances giving rise to that conflict and to advise him to consult an independent lawyer.

■ The question of whether AKO committed an ethical violation should be referred to the Grievance Committee. However, the issue on this motion is whether AKO should be precluded from acting as counsel for Sprint in this case, not whether the attorneys should be disciplined. Federal courts have the power "to disqualify counsel where necessary to preserve the integrity of the adversary process in actions before them." *Board of Educ. v. Nyquist,* 590 F.2d 1241, 1249 (2d Cir.1979). However, a federal court must use great care in exercising this power. As the Second Circuit has noted, "disqualification motions are often interposed for tactical rea-

sons, and even when made in the best of faith, such motions inevitably cause delay." *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791–92 (2d Cir.1983). In disqualifying an attorney, the court is overriding a party's important right to be represented by counsel of its own choosing. *Id.* at 791.

For these reasons, the Second Circuit has emphasized that a court should not disqualify a lawyer based on impropriety alone, but should do so only "when an attorney's conduct tends to taint the underlying trial." *Nyquist*, 590 F.2d at 1246. *See also Russell–Stanley Holdings, Inc. v. Buonanno*, 210 F.Supp.2d 395, 397 (S.D.N.Y.2002). Specifically, "it must be shown that the attorney was in a position where he could have received information which his former client might reasonably have assumed the attorney would withhold from his present client." *Allegaert v. Perot*, 565 F.2d 246, 250 (2d Cir.1977). *See also Evans*, 715 F.2d at 791.

Assuming that AKO represented Millwood, it represented him jointly with Sprint, his employer. When an attorney represents an employer and an employee jointly, the employee cannot reasonably expect the attorney to keep any information from the employer. *Kempner v. Oppenheimer & Co., Inc.*, 662 F.Supp. 1271, 1277 (S.D.N.Y.1987). *See also Rocchigiani v. World Boxing Counsel*, 82 F.Supp.2d 182, 187–88 (S.D.N.Y.2000) (joint representation of boxer and his promoter). Moreover, Millwood testified that he did not want or expect Siev to keep anything he told him from Sprint. Millwood also testified that he believed that AKO represented him in his capacity as an employee of Sprint, that AKO was "only talking to me because of Sprint," and that for the purposes of this lawsuit, he "didn't see [himself] as separate from Sprint."

Millwood does not point to any actual prejudice. He argues that I should disqualify AKO regardless of prejudice. Specifically, he argues that AKO should be disqualified for failing to explain to him the implications of common representation. Millwood relies primarily on *Felix v. Balkin*, 49 F.Supp.2d 260 (S.D.N.Y.1999), a case in which counsel for movant's employer was disqualified even though the movant had no expectation of confidentiality vis-a-vis her employer.

The long-established rule in this Circuit is that a court should not disqualify an attorney in the absence of trial taint. "The business of the court is to dispose of litigation and not to act as a general overseer of the ethics of those who practice here unless the questioned behavior taints the trial of the cause before it." *W.T. Grant Co. v. Haines*, 531 F.2d 671, 677 (2d Cir.1976). Since Millwood had no expectation of confidentiality as against Sprint, he did not disclose to AKO any information that would prejudice him in this case. The Second Circuit has clearly and repeatedly held that a violation of the Code of Professional Responsibility should result in disqualification only when the violation taints the integrity of the proceeding before the court. *Nyquist*, 590 F.2d at 1246; *Haines*, 531 F.2d at 677; *Lefrak v. Arabian American Oil Co.*, 527 F.2d 1136, 1139–40 (2d Cir.1975); *see also Universal City Studios, Inc. v. Reimerdes*, 98 F.Supp.2d 449, 455–56 (S.D.N.Y.2000).

## CONCLUSION

For the foregoing reasons, Millwood's motion to disqualify AKO is denied. Millwood's counsel is directed to report AKO to the Grievance Committee for the First Judicial Department of New York and the Grievance Committee of this Court.

SO ORDERED.