MEMORANDUM OPINION
 
 — Redacted
 

 KESSLER, District Judge.
 

 This matter is before the Court on the United States’ Motion to Quash Subpoenas Issued by Counsel for Neil H. Koslowe,
 
 *LXXIII
 
 Shearman & Sterling, and BATAS,
 
 [1]
 
 the Opposition and Reply (“Motion to Quash”), as well as the United States’ Motion to Disqualify Neil H. Koslowe and Shearman & Sterling from Representing BATAS, the Opposition and Reply (“Motion to Disqualify”). Because of the interrelationship between the factual and legal issues in both Motions, the Court is considering them together and will issue one Opinion. There will be separate Orders for each Motion. Upon consideration of all the pleadings and exhibits, the applicable case law, and the entire record herein, the Court concludes that the Motion to Quash should be granted and the Motion to Disqualify should be granted.
 

 I. PROCEDURAL BACKGROUND
 

 The United States has been attempting to compel BATCo to produce certain documents in the possession of its Australian affiliate, BATAS, for almost two years. On April 14, 2003, after litigation regarding two United States Motions to Compel, the Court issued Order # 343 granting those Motions and ordering BATCo to produce or log the documents in issue by May 14, 2003 (later extended to June 1, 2003 in Order # 354). On October 20, 2003, after further litigation, the Court found BATCo in contempt of Court due to its continued failure to produce a privilege log for documents covered by Order # 343, which BATCo alleged were withheld on privilege grounds. Order #419,
 
 United States v. Philip Morris USA Inc.,
 
 No. 99-cv-2496 (GK), 2003 WL 22462167 (D.D.C. Oct. 20, 2003).
 

 Sometime in October 2003, although the precise date is not clear from the record, BATAS retained as its counsel in this matter Shearman & Sterling, a prominent New York City-based law firm, and Neil H. Koslowe, one of the partners in its Washington, D.C. office. On October 23, 2003, counsel for BATAS, including Mr. Koslowe, and the Government met and conferred to discuss BATAS’ intention to file a Motion for Leave to Intervene. On December 5, 2003, after filing of the Motion and litigation over its merits, the Motion to Intervene was granted in Order #449.
 

 On December 11, 2003, Government counsel wrote a letter to Mr. Koslowe, formally raising the issue of his disqualification based on his prior representation of the United States in tobacco matters.
 
 [2]
 
 On December 16, 2003, Mr. Koslowe responded, and on December 23, 2003, the United States replied with more specific information regarding the number of hours he reported working on tobacco matters and reminding him that he had worked on highly confidential documents. In this letter, the Government requested a meet and confer on its anticipated Motion to Disqualify Mr. Koslowe and Shearman & Sterling from continuing to represent BA-TAS in this law suit.
 

 On December 29, 2003, Mr. Koslowe responded by requesting numerous documents from the Government. No previous mention had been made of the need for discovery on the part of Mr. Koslowe or Shearman & Sterling in previous conversations with the Government. The United States replied that same day, providing
 
 *LXXIV
 
 copies of certain time records showing the hours that Mr. Koslowe reported working on the tobacco matters, but refusing to provide any privileged documents or formal discovery. On December 30, 2003, the United States again requested an expedited meet and confer. Because of Mr. Kos-lowe’s unavailability, it was not possible for the meet and confer to take place until January 6, 2004.
 
 [3]
 
 At that meet and confer, the Government indicated it had no objection to Mr. Koslowe’s efforts to use informal discovery by contacting Department of Justice lawyers with whom he had worked.
 

 On January 12, 2004, Mr. Stephen J. Marzen, who represented Mr. Koslowe and Shearman & Sterling at the January 6, 2004 meet and confer, telephoned the Government and reported that neither Mr. Koslowe nor Shearman & Sterling would be voluntarily withdrawing, and that they anticipated filing a cross-motion for discovery shortly. No such motion for discovery has ever been filed. On January 21, 2004, the Government filed its Motion to Disqualify.
 

 On January 26, 2004, the parties met and conferred regarding the proposed motion of Mr. Koslowe and Shearman & Sterling for an additional 10 days to respond to the disqualification Motion; the Government would consent to only an additional seven days. Two days later, on January 28, 2004, Koslowe,
 
 et al.,
 
 filed a motion seeking an additional 17 (not 10) days to answer the disqualification Motion.
 
 [4]
 
 In that motion they mentioned, for the first time, a need to conduct discovery. The motion for extension of time was granted by Minute Order on January 29, 2004.
 

 On February 3, 2004, Mr. Marzen requested a meet and confer with the Government about a proposed motion to take depositions. That meet and confer was scheduled for February 4, 2004 at 5:00 p.m. Less than 10 minutes before the start of the 5:00 p.m. meet and confer, the United States received copies of subpoenas, attached to notices of depositions, requiring the attendance of four government attorneys as witnesses at depositions on February 9 and 10, 2004, and production of documents by February 10, 2004. At the February 4, 2004, meet and confer, Mr. Marzen stated that he intended to file a motion seeking the discovery that had already been served, on behalf of Koslowe,
 
 et al,
 
 No such motion has ever been filed.
 

 On February 6, 2004, at a regularly scheduled status conference with the Court, the Government raised the subpoena issue. The Court established a briefing scheduling, pursuant to which the United States filed its Motion to Quash. All subpoenas were stayed pending resolution of that Motion.
 

 II. THE PARTIES’ FACTUAL ALLEGATIONS
 
 [5]
 

 Mr. Koslowe was a long-time Department of Justice attorney who served there for 28 years. For the last 22 of those years, he was Special Litigation Counsel
 
 [6]
 
 for the Department in the Federal Pro
 
 *LXXV
 
 grams Branch of the Civil Division and a member of the Senior Executive Service.
 

 Mr. Koslowe was assigned to work on particularly important, sensitive and difficult legal disputes by the Civil Division’s Assistant and Deputy Attorneys General, as well as by its Branch Directors. It is clear from the materials submitted that he handled especially challenging issues and that he performed his own work. According to Mr. Koslowe, one of his specialities was defending Justice Department attorneys accused of violating the rules of professional conduct.
 

 In recognition of his 28 years of service, Mr. Koslowe received from the Attorney General the John Marshall Award for Outstanding Professional Achievement by a Litigator and from the President the Presidential Rank Award of Distinguished Executive for exceptional service to the American people over an extended period of time.
 

 In the spring or summer of 1995, Mr. Koslowe was assigned, with other Civil Division lawyers, the task of assisting the Food & Drug Administration (“FDA”) and the Department of Health & Human Services with the Youth Tobacco Rulemaking, in which FDA proposed to assert its jurisdiction over the tobacco industry.
 
 See Regulations Restricting the Sale and Distribution of Cigarettes and Smokeless Tobacco to Protect Children and Adolescents,
 
 60 Fed.Reg. 41,314 (Aug. 11, 1995) (notice of proposed rulemaking); 61 Fed.Reg. 44,-396 (Aug. 28, 1996) (final regulations). It is undisputed that Mr. Koslowe worked extremely closely with the then-FDA Commissioner, Dr. David Kessler,
 
 [7]
 
 and that his assignment was “to help protect the administrative record from subsequent challenge in court.” Koslowe Deck ¶ 16. Mr. Koslowe advised the FDA on legal issues relating to the compilation of the administrative record, helped draft portions of the FDA’s basis-and-purpose statement, and helped respond to public comments. He also reviewed notes of interviews with confidential informants to the FDA, as well as other privileged and confidential documents that were used and/or relied upon during the rulemaking.
 

 On August 10, 1995, the day before actual publication of the FDA’s notice of proposed rulemaking in the
 
 Federal Register,
 
 litigation was commenced against the FDA in North Carolina challenging its actions.
 
 See Coyne Beahm, Inc. v. FDA,
 
 966 F.Supp. 1374 (M.D.N.C.1997),
 
 rev’d sub nom, Brown & Williamson Tobacco Corp. v. FDA,
 
 153 F.3d 155 (4th Cir.1998),
 
 aff'd,
 
 529 U.S. 120, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000); and its companion case,
 
 American Advertising Federation v. Kessler,
 
 966 F.Supp. 1374 (M.D.N.C.1997),
 
 rev’d sub nom, Brown & Williamson Tobacco Corp. v. FDA,
 
 153 F.3d 155 (4th Cir.1998),
 
 aff'd,
 
 529 U.S. 120, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) (collectively the “FDA Litigation”). In addition to challenging the legal basis for the FDA’s assertion of jurisdiction over the tobacco industry, the defendants in those two cases argued that the rulemaking was invalid under the Administrative Procedure Act, 5 U.S.C. § 701,
 
 et seq.,
 
 because the FDA relied upon documents that were not included in the public administrative record.
 

 The time records submitted by Mr. Kos-lowe to his superiors at DOJ indicate that he worked a total of 382 hours on the
 
 Coyne Beahm
 
 and
 
 American Advertising
 
 cases. Mr. Koslowe admits submitting such time statements but vigorously denies that he ever actually worked on the FDA tobacco Litigation. Instead, he says that to the best of his recollection, he allocated
 
 *LXXVI
 
 the time he worked on the Youth Tobacco Rulemaking “as a matter of administrative convenience to the ‘case names’ and ‘case numbers’ for the litigation, even though [he] did not work on the litigation personally and substantially.” U.S. Ex. 8, 12/30/04 ltr., Koslowe to Eubanks at 2.
 

 In 1997, Mr. Koslowe also submitted time records documenting his participation in DOJ’s analysis of a June 1997 version of what ultimately became the Master Settlement Agreement (“MSA”) between the states and the tobacco industry.
 
 [8]
 
 As part of that analysis, Mr. Koslowe and Anne Weismann, an Assistant Director in the Civil Division, wrote a September 12, 1997 memorandum entitled “Access to Privileged Tobacco Company Documents.” U.S.
 
 in camera
 
 Ex. 9, 9/12/97 mem., Kos-lowe
 
 &
 
 Weismann to Grindder.
 
 [9]
 
 Mr. Kos-lowe’s assignment was
 

 [text redacted]
 

 Id.
 
 at 11.
 

 In early 2000, the Deputy Attorney General, pursuant to Case Management Order # 6 in this case, wrote all DOJ component heads requesting that they identify any tobacco-related materials in their offices. Mr. Koslowe identified numerous responsive documents in his office, including various litigation-related documents that the United States had withheld from production on grounds of privilege. U.S.
 
 in camera
 
 Ex. 1, 2/14/00 mem., Kovakas to Hon-igberg at 2-3. These materials included
 

 [text redacted]
 

 Id.
 
 at 3. These materials included: [text redacted]
 

 Id.
 
 at 2. In 2001, Mr. Koslowe left the Department of Justice to join Shearman
 
 &
 
 Sterling.
 

 III. MOTION TO QUASH
 

 A. Courts Have Substantial Discretion to Grant or Deny Discovery in Proceedings to Disqualify Counsel
 

 The case law is clear that courts have broad discretion to decide whether to grant any formal discovery in disqualification proceedings and, if so, how much.
 
 Lefrak v. Arabian American Oil Co.,
 
 527 F.2d 1136, 1140 (2d Cir.1975). As the Second Circuit noted in
 
 Lefrak:
 

 Certainly the method of conducting the inquiry is within the discretion of the judge charged with the responsibility of supervision.... Whether discovery is permissible is clearly within [her] discretion in any event.
 

 Id; see also The European Community v. RJR Nabisco, Inc.,
 
 134 F.Supp.2d 297, 309 (E.D.N.Y.2001) (“The quantum of discovery required in connection with such a [disqualification] motion is left to the discretion of the trial judge.”). Moreover, the courts have focused on the need for an adequate record for appellate review, rather than any precise form or scope of discovery.
 
 See General Mill Supply Co. v. SCA Services, Inc.,
 
 697 F.2d 704, 710 (6th Cir.1982) (stating that “an evidentiary hearing need not occur in every such [disqualification] motion,” but that the factual inquiry must be conducted in a manner which will allow appellate review);
 
 McKin
 
 
 *LXXVII
 

 ney v. McMeans,
 
 147 F.Supp.2d 898, 900 (W.D.Tenn.2001) (finding that “although it need not hold an evidentiary hearing, the court must satisfy itself that an adequate evidentiary record exists permitting later appellate review”).
 

 In short, as long as the trial court concludes that there will be an adequate record for appellate review, whether in the form of affidavits, documents, or submissions
 
 in camera,
 
 the court may in its discretion decide whether discovery is either warranted or inappropriate. Indeed, as far back as 1869, the Supreme Court ruled that in proceedings charging unprofessional conduct, the manner in which the proceeding was to be conducted, “so that it was without oppression or unfairness, was a matter of judicial regulation.”
 
 Randall v. Brigham,
 
 74 U.S. (7 Wall.) 523, 540, 19 L.Ed. 285 (1868).
 

 In this case, Koslowe,
 
 et al.,
 
 have had the benefit of informal discovery, i.e., discussions with other attorneys in the Justice Department who served at the same time that Mr. Koslowe did, data and records provided by the Justice Department, and information contained in Mr. Koslowe’s own files and. memory. The various declarations, documents, and
 
 in camera
 
 submissions provided by the Government and Koslowe,
 
 et al,
 
 will unquestionably be sufficient “to allow appellate review.”
 

 Given the fact that this massive litigation is less than six months from trial, opening discovery on this satellite issue would unduly divert all parties from what must be their central focus—getting prepared for the September 13, 2004 trial.
 

 B. The Discovery Sought Will Not Be Material to Resolving The Disqualification Motion
 

 Koslowe,
 
 et al.,
 
 in their discovery requests seek information which is either irrelevant to the issues which must be decided in the Motion to Disqualify, is plainly privileged, or is already in their possession, as the following three examples demonstrate:
 

 1. Koslowe,
 
 et al.,
 
 have subpoenaed the testimony of four government attorneys who also worked on the FDA Litigation, arguing that they might testify that Mr. Koslowe had not worked with them in that Litigation. Whether they would so testify is pure speculation. One of them, Mr. Kell, has already given a declaration to the contrary. Another, Ms. Autor, has indicated that she does not remember Mr. Kos-lowe being involved in the litigation, but admits she “could be mistaken.” U.S. Ex. 13, 1/20/04 e-mail, Autor to Koslowe. Obviously, memories fade over time and documentary evidence is more rehable. Questions that Koslowe,
 
 et al.,
 
 wish to pose to Mr. Kell as to whether Mr. Koslowe appeared at any hearings in the Tobacco Litigation in North Carolina or exactly what type of work Mr. Koslowe performed on that Litigation cannot refute his own time reports of the 382 hours he spent on the Litigation.
 

 2. Koslowe,
 
 et al.,
 
 seek various kinds of information about the two challenges raised to the FDA regulations in the Middle District of North Carolina. However, they have already received the court filings they requested directly from the Clerk of Court’s office in the Middle District of North Carolina.
 
 [10]
 
 In addition to the public court files, Koslowe,
 
 et al.,
 
 also seek the Justice Department’s “entire liti
 
 *LXXVIII
 
 gation files from the Middle District of North Carolina litigation.” There can be little doubt that those files are privileged and protected by the attorney work product doctrine.
 

 3. Koslowe,
 
 et al.,
 
 have requested additional categories of documents from the Department, but have failed to demonstrate the need for them. Whether other DOJ attorneys did or did not work on the FDA Tobacco Litigation cannot undercut or contradict the fact that Mr. Koslowe himself reported that he spent 382 hours on that Litigation. Similarly, the request for compilation of all time reported by other DOJ attorneys attributed to both the FDA Rulemaking and the FDA Litigation cannot prove what hours Mr. Koslowe himself did, or did not, spend on the Litigation.
 

 Koslowe,
 
 et al,
 
 argue that if there are significant differences in the number of hours that Mr. Koslowe worked on the Litigation and the number of hours that other DOJ attorneys worked on the Litigation, it would help show that Mr. Koslowe spent those hours on the FDA Youth Tobacco Rulemaking rather than the FDA Litigation. This is sheer speculation and would not logically prove anything. Moreover, because Mr. Koslowe admittedly worked alone reviewing confidential FDA records, the hours spent by other DOJ attorneys on the Litigation would not be probative of what work Mr. Koslowe was doing and how much, on either the Rule-making or the Litigation.
 

 In short, what work other DOJ attorneys performed on either the Youth Tobacco Rulemaking or the FDA Litigation is simply unrelated to the relevant issue in the Motion to Disqualify: whether Mr. Koslowe participated “personally and substantially” in the Litigation.
 

 Finally, Koslowe,
 
 et al.,
 
 seek five years’ worth of original time sheets from 1994 to 1998. Even if those time sheets still exist (and they may well not), there is certainly no proffer as to what they might show, and there is no proffer that they would contradict Mr. Koslowe’s own personal report of the 382 hours he spent on the FDA Litigation.
 

 In short, it is clear that there is no logical connection between the justifications offered for the discovery sought and the issues which are material to resolving the Motion to Disqualify. What is clear is that Koslowe,
 
 et al.,
 
 are intent on engaging in a diversionary fishing expedition based on sheer speculation. This the Court is not going to permit.
 
 [11]
 

 C. The Subpoenas Must Be Quashed for Violation of the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Columbia, and Order # 51
 

 Fed.R.Civ.P. 30(b)(1) requires that “reasonable notice” be provided to any witness served with a subpoena. The witnesses in this case—busy Department of Justice attorneys with other professional and personal commitments—were served with subpoenas three business days, or less, before the scheduled depositions. Needless to say, notice of three business days, especially to busy litigators who need to prepare to testify about events occur
 
 *LXXIX
 
 ring six to nine years previously, does not constitute “reasonable notice.” The violation of Rule 30(b)(1) by Koslowe,
 
 et al.,
 
 is clear.
 
 [12]
 

 Fed.R.Civ.P. 45(b)(1) requires prior notice before issuing and signing document production subpoenas. No such prior notice was provided. The violation of Rule 45 by Koslowe,
 
 et al,
 
 is clear.
 

 LCvR 30.1 requires five business days’ notice for a deposition. As earlier noted, only three business days’ notice, or less, was given in this case. The violation of Local Rule 30.1 by Koslowe,
 
 et al,
 
 is clear.
 

 Order # 51 requires a 30-day consultation period and 14 days’ notice before a deposition is scheduled. No consultation whatsoever was held and, as noted, the depositions were noticed only three business days, or less, in advance of the actual scheduled date. The violation of Order # 51 by Koslowe,
 
 et al,
 
 is clear.
 
 [13]
 

 Order # 197, later redesignated as Order #204, requires that all fact witness depositions are to be concluded by July 1, 2002. Under that Order, any fact witness deposition scheduled after July 1, 2002 may be conducted only with the permission of the Court after the filing of motions. No motion for leave to conduct a fact witness deposition after July 1, 2002, regarding the Motion to Disqualify, has ever been filed. The violation of Order # 197 by Koslowe,
 
 et al,
 
 is clear.
 

 Finally, Fed.R.Civ.P. 45(b)(1) requires personal service of deposition subpoenas. Here, several of the deposition subpoenas were simply left at the mail room at DOJ or with support staff, but were not person
 
 *LXXX
 
 ally served on Deborah Autor, Douglas Letter, or Gerald Kell. The violation of Rule 45(b)(1) by Koslowe,
 
 et al.,
 
 is clear.
 

 These flagrant violations of the Federal Rules, this Court’s Local Rules, and this Court’s Case Management Orders — to say nothing of common courtesy and civility— is astounding. With full knowledge that the subpoenas being served were in violation of the rules and orders already cited, counsel for Mr. Koslowe,
 
 et al.,
 
 purposefully and deliberately served patently faulty subpoenas on four busy DOJ attorneys with a mere three, or less, business days’ of advance notice. The failure to give Government counsel, with whom counsel for Koslowe,
 
 et al.,
 
 was in constant contact, any advance notice of the service of the subpoenas is particularly stunning.
 

 :H * * * *
 
 *
 

 For all the foregoing reasons, the Court concludes that the Motion to Quash will be granted.
 

 IV. MOTION TO DISQUALIFY
 

 A. The Applicable Law
 

 The District of Columbia Rules of Professional Conduct have been adopted by this Court and are applicable to all lawyers who handle litigation in this District. LCvR 83.15(a). District of Columbia Rule 1.11(a) provides:
 

 A lawyer shall not accept other employment in connection with a matter which is the same as, or substantially related to, a matter in which the counsel participated personally and substantially as a public official or employee. Such participation includes acting on the merits of a matter in a judicial or other adjudicatory capacity.
 

 This rule of professional conduct, modeled in part on the ABA’s Model Rule of Professional Conduct 1.11, is often referred to as the “revolving door” or “side-switching” rule.
 
 See Brown, v. D.C. Board of Zoning Adjustment,
 
 486 A.2d 37, 43 (D.C.1984)
 
 (en
 
 banc)
 
 (“Brown”)
 
 (describing the “revolving door” context as one in which “a government attorney who leaves to join a private firm and begins to represent clients against, or before an agency of, the former government employer”).
 

 All parties agree that the major authority in this jurisdiction for interpretation of D.C. Rule 1.11 is the comprehensive opinion of the D.C. Court of Appeals in
 
 Brown.
 

 [14]
 

 In that case, the Court of Appeals explained that it “must be especially careful” in cases involving former Government attorneys who have allegedly violated Rule 1.11(a) for the following reasons:
 

 First, because government attorneys may have had access to more kinds of information in connection with the prior representations than private attorneys typically do, there is a greater potential for misuse of information — including information that is not necessarily confidential in nature — ■... in the revolving door context. Second, the public is generally more concerned about government improprieties than about private improprieties. Thus, the appearance problem is more severe because the public is likely to be more critical of this potential misuse of information.
 

 486 A.2d at 49.
 

 For those reasons, the Court of Appeals held:
 

 
 *LXXXI
 
 [I]n cases where the complainant’s evidence shows that the factual contexts of the two (or more) transactions overlap in such a way that a reasonable person could infer that the former government attorney may have had access to information legally relevant to, or otherwise useful in, the subsequent representation, we conclude that the complainant will have established a prima facie showing that the transactions are substantially related. The burden of producing evidence that no ethical impropriety has occurred will then shift to the former government attorney, who must rebut complainant’s showing by demonstrating that he or she could not have gained access to information during the first representation that might be useful in the later representation. Absent sufficient rebuttal, the complainant will have carried the burden of persuasion as the moving party.
 

 Id.,
 
 486 A.2d at 49-50.
 

 Finally, the Court of Appeals concluded with the following admonition:
 

 It is important to stress that the attorney cannot meet this rebuttal burden
 
 simply
 
 by claiming that no useful information was, in fact, received in the first matter. If the factfinder is persuaded that two matters are substantially related — i.e., that it is reasonable to infer counsel may have received information during the first representation that might be useful to the second — there arises a conclusive inference that useful information was, in fact, received.
 

 Id.,
 
 486 A.2d at 50 (emphasis added).
 

 Since deciding
 
 Brown,
 
 the Court of Appeals has further cautioned that “[t]he ‘substantially related’ test ... is meant to induce a former government lawyer considering a representation to err well on the side of caution.”
 
 In re Sofaer, 728
 
 A.2d 625, 628 (D.C.1999).
 

 Keeping in mind these principles, the Court will now address the following issues:
 

 1. Did Mr. Koslowe participate “personally and substantially” in any “matter”?
 

 2. If so, is that matter “substantially related” to the pending litigation over the BATAS privilege logs?
 

 B. The Legal Work that Mr. Kos-lowe Performed on Tobacco-Related Issues During 1995-1996 Constitutes a “Matter” Within the Meaning of Rule 1.11
 

 The parties agree that any work by a government lawyer defending a legal challenge to an administrative regulation constitutes a “matter” for purposes of disqualification, and that the term “matter” excludes administrative rulemakings.
 
 See
 
 Rule 11.1(g), Comment 3, limiting “matter” to “matters involving a specific party or parties.” Thus, while Mr. Koslowe’s work on the Youth Tobacco Rulemaking is not deemed a “matter,” his work on the FDA Tobacco Litigation is.
 

 In this instance, we have clear record evidence that Mr. Koslowe reported working 382 hours on the FDA Litigation that challenged the FDA Youth Tobacco Rule-making. Mr. Koslowe now denies the accuracy of those records, which he himself submitted. He claims that — somehow— the hours he reported were improperly allocated to the Litigation when in fact he spent those hours on the FDA Youth Tobacco Rulemaking. It is, of course, irrelevant whether, as Mr. Koslowe argues, he ever entered an appearance or formally represented the federal defendants in that Litigation. He may well not have. The issue, of course, is not whether he entered an appearance, but whether he worked personally and substantially in any capacity on the Litigation.
 

 
 *LXXXII
 
 It is very difficult to credit this explanation. After 28 years of working at the Department of Justice, it is hard to believe that Mr. Koslowe would not know how to accurately fill out a time sheet and allocate hours to the proper descriptive activity category. Moreover, it is significant that his report of 245 hours spent on the
 
 Coyne Beahm
 
 case began with 8 hours of work on August 9, 1995, the day before that case was filed, and his report of 137 hours spent on the
 
 American Advertising Federation
 
 case began with 8 hours of work on August 10, 1995, the same day that case was filed. Finally, it is particularly significant that Mr. Koslowe reported spending 83 hours in the Litigation
 
 after
 
 the final Regulations were issued in August 1996; he offers no explanation of how those 83 hours could have been devoted to anything but the Litigation.
 

 Koslowe,
 
 et al,
 
 seem to be arguing that Mr. Koslowe attributed all the time he spent on the FDA Rulemaking to the DOJ category for the FDA Litigation because the Rulemaking was challenged in that Litigation. Again, it is difficult to credit such an explanation from a 28-year veteran of DOJ. More substantively, he seems to be arguing that the DOJ categories would have permitted such allocation.
 

 However, he admits, and the
 
 in camera
 
 documents demonstrate, that the precise reason he was assigned to work on the Rulemaking was to fend off the litigation challenges that were anticipated.
 

 According to privileged Government records, he and his superior, George Phillips, Acting Deputy Assistant Attorney General, believed
 

 [text redacted]
 

 U.S.
 
 in camera
 
 Ex. 4, circa 12/14/95 “Memo to File,” footer “KOSLLTR.”
 
 [15]
 
 These DOJ concerns about the difficulties in defending the FDA administrative record were reiterated in a May 1996 document entitled “Major Tobacco Litigation Issues,” as well as a draft letter from Mr. Phillips to the FDA Chief Counsel Margaret Porter. U.S.
 
 in camera
 
 Ex. 10; U.S.
 
 in camera
 
 Ex. 6.
 

 There is no question, and Mr. Koslowe does not deny, that he worked closely with Dr. Kessler and personally reviewed substantial amounts of confidential government information in connection with defending the Rulemaking in the FDA Litigation. A draft letter from Mr. Phillips to the Chief Counsel at the FDA indicates that Mr. Koslowe [text redacted]
 

 U.S.
 
 in camera
 
 Ex. 7, undated draft letter (circa Dec. 1995), Phillips to Porter, cc. Blumberg, Koslowe and Thiroff, footer “KOSLOWE.” The letter refers to Mr. Koslowe having personally reviewed
 

 [text redacted]
 

 Id.
 

 In fact, the concerns of the Department were confirmed when both the initial complaint and the amended complaint in the North Carolina FDA Litigation did in fact challenge the adequacy of the FDA’s administrative record. Thus, it is clear that the high level review, analysis and advice that Mr. Koslowe provided to FDA Commissioner Kessler were all directly related to, and inextricably intertwined with, defense of the FDA Litigation which the Department of Justice firmly, and accurately, predicted would be forthcoming, after the proposed Youth Tobacco Regulations were issued.
 

 Consequently, it is clear that whatever work Mr. Koslowe performed on the FDA
 
 *LXXXIII
 
 Rulemaking was intimately tied to the ensuing litigation which DOJ was virtually certain would be brought. When the lawsuit was filed, the day before the FDA’s Notice of Proposed Rulemaking was actually published in the
 
 Federal Register,
 
 it did indeed attack the adequacy of the administrative record:
 

 FDA’s assertion of jurisdiction relies upon materials not in the public administrative record, and thereby deprives plaintiffs of their fundamental right to provide meaningful comment and, thus, violates the Administrative Procedure Act and the Fifth Amendment of the U.S. Constitution. For example, FDA’s assertion of jurisdiction is based on facts and data that have not been disclosed to the plaintiffs.
 

 First Am. Compl. ¶ 82, U.S. Ex. 25. Therefore, even though rulemakings are not ordinarily deemed “matters” within the scope of Rule 1.11, the specific nature of Mr. Koslowe’s work on the FDA Rulemak-ing was directly connected to the Litigation.
 
 [16]
 

 Moreover, the fact that Mr. Koslowe continued to report hours worked on the litigation (he reported an additional 62 hours on the litigation in December 1995) is further corroboration of his substantial and personal participation in the FDA Litigation, not just the Rulemaking.
 

 It is true that the FDA Litigation ultimately narrowed its focus to the single core issue of the FDA’s rulemaking authority over tobacco. However, that does not mean that DOJ, as a zealous defender of the FDA’s interests, would not have been preparing to adequately respond to
 
 all
 
 arguments that plaintiffs might raise in the North Carolina Litigation, especially to those arguments which they had explicitly presented in their initial and amended complaints.
 

 In sum, the record demonstrates that the work Mr. Koslowe personally and substantially performed on the FDA Youth Tobacco Rulemaking was an integral part of preparing a defense to the FDA Litigation which DOJ knew was imminent, and in particular to addressing the legal weakness that DOJ perceived in the FDA’s Rulemaking proceedings. Whether one considers only the 83 hours Mr. Koslowe recorded working on the FDA Litigation
 
 after
 
 issuance of the final FDA regulations in August 1996, or whether one considers the additional 166 hours Mr. Koslowe recorded working on matters that were unquestionably part of the FDA Litigation,
 
 [17]
 
 or whether one considers the entire 382 hours that Mr. Koslowe recorded working on the FDA Litigation, it is clear that all of his advice, analysis, and review were for the sole purpose of defending the FDA against the challenge raised to its administrative record in the Litigation. Mr. Kos-lowe was indeed “part of the litigation team defending the FDA’s rulemaking” in that Litigation. U.S. Ex. 19, 1/20/04 Kell Decl. As such, he participated personally and substantially in a “matter” as defined in D.C. Rule 1.11.
 

 C. Mr. Koslowe’s Substantial and Personal Involvement in the FDA Rulemaking Litigation Is Substantially Related to the Litigation over the BATAS Privilege Logs
 

 The District of Columbia Court of Appeals in
 
 Brawn,
 
 set forth the test for
 
 *LXXXIV
 
 whether two matters are “substantially related” for purposes of the side-switching prohibition in Rule 1.11. That test is whether it can “reasonably be said that during the former representation, the attorney might have acquired information related to the subject matter of the subsequent representation.”
 
 Id.,
 
 486 A.2d at 48 (quoting
 
 Cannon v. U.S. Acoustics Corp.,
 
 398 F.Supp. 209, 223 (N.D.Ill.1975),
 
 aff'd, in relevant part,
 
 532 F.2d 1118 (7th Cir.1976)). Elaborating on this test, the court went on to say that the revolving door rule
 

 is designed to address “at least a reasonable possibility that some specifically identifiable impropriety” would occur [quoting
 
 Woods v. Covington County Bank,
 
 537 F.2d 804, 813 (5th Cir.1976) [¶]... only if specific information (as distinguished from general agency expertise or contacts) that a former government attorney
 
 may
 
 have had access to in one matter is
 
 likely
 
 to be useful in a subsequent matter, will there be a reasonable possibility of the particular improprieties that [D.C. Rule 1.11] is intended to forestall.
 

 486 A.2d at 48^9 (emphasis added).
 

 The District of Columbia Court of Appeals went out of its way to point out that the attorney whose disqualification is being sought cannot meet his rebuttal burden by simply claiming that in fact he received no useful information while working on the government matter. The court stated that
 

 [i]f the factfinder is persuaded that two matters are substantially related — i.e., that it is reasonable to infer counsel may have received information during the first representation that might be useful to the second' — there arises
 
 a conclusive inference
 
 that useful information was, in fact, received.
 

 486 A.2d at 50 (emphasis added) (citations omitted).
 

 On the facts presented in this Motion, it is clearly reasonable to infer that Mr. Kos-lowe, in the course of providing extensive and extended legal representation to the FDA,
 
 [18]
 
 “may have received information” that might be useful in defending BATAS’ privilege logs. Mr. Koslowe does not deny that during that representation, he had access to numerous privileged and confidential government documents, including memoranda memorializing informant interviews and documents produced by informants.
 

 In terms of whether the information received during his “first representation” (defense of the FDA Litigation) might be useful in now representing BATAS, the usefulness of that access, the United States points out in its Motion that it may well argue during the briefing of BATAS’ privilege claims that because of its “substantial need” for the documents in issue, any assertion of qualified protection, such as work product, may be overcome under Fed.R.Civ.P. 26(b)(3). The Government is correct that the extensive knowledge that Mr. Koslowe acquired during the course of his participation in the FDA Litigation will assist him in fashioning strategy and arguments to rebut the Government’s “substantial need” claim. For example, the Government may well claim substantial need for a particular privileged BATAS document; in response, Mr. Koslowe may be able to identify resources at the Government’s command which demonstrate the absence of substantial need.
 

 It is no response at all to argue as Mr. Koslowe,
 
 et al,
 
 do that the risk that he would use confidential information in such
 
 *LXXXV
 
 a manner is “virtually non-existent, since in order to so do, he would have to disclose that confidential information to the Court, thereby exposing himself to sanctions.” Koslowe,
 
 et al.,
 
 Opp. at 37. Under District of Columbia Rule 1.11 the Government is not left to the tender mercies of Mr. Kos-lowe’s conscience. Disciplinary rules exist to protect former clients from the risk of questionable ethical decisions by their former lawyer. If we could safely rely on the ethical judgment of all counsel, we would have no need for a Code of Professional Conduct or disciplinary rules.
 

 Mr. Koslowe also argues that “it is not reasonable to infer that [he] had access to confidential information in the course of the prior matter.”
 
 Id.
 
 at 36. That statement flies in the face of reality. Mr. Kos-lowe does not deny that he spent several days with the FDA Commissioner carefully reviewing confidential documents.
 

 The Government also argues that because it may wish to raise the crime-fraud exception in order to overcome privileges that BATAS may assert, Mr. Koslowe’s access to confidential client information which he acquired while representing the United States would clearly benefit BA-TAS, his current client. Again, Koslowe,
 
 et al.,
 
 respond that even if he had such knowledge, it would only be useful “if the Government makes
 
 unfounded
 
 privilege challenges.”
 
 Id.
 
 at 38 (emphasis in original).
 

 If it is reasonable to infer that Mr. Koslowe obtained such confidential information in the course of personal and substantial work on the FDA Litigation, then he is not permitted to use that information on behalf of BATAS whether the Government’s privilege challenges are founded or unfounded. Mr. Koslowe’s insights into the strengths and weaknesses of the Government’s evidence regarding alleged tobacco fraud is exactly the kind of “information [received during the first representation] ... that might be useful to the second [representation].”
 
 Brown,
 
 486 A.2d at 50. Finally, it must be remembered that there is a joint defense agreement which may make Mr. Kos-lowe’s strategic advice particularly valuable.
 

 Based on the specific facts of this case, the personal and substantial work that Mr. Koslowe did on the FDA Litigation, and the type of issues that BATAS will be raising in its limited intervention, there is no question that “it is reasonable to infer counsel may have received information during the first representation that might be useful to the second.”
 
 Brown,
 
 486 A.2d at 50. Once that conclusion is reached, the “burden of producing evidence that no ethical impropriety occurred will then shift to the former government attorney.”
 
 Id.
 
 In other words, “there arises a conclusive inference that useful information was, in fact, received.”
 
 Id.
 
 In this case, Koslowe,
 
 et al,
 
 have failed to rebut that conclusive inference, because they have failed to demonstrate that Mr. Koslowe “could not have gained access to information during the first representation that might be useful in the later representation.”
 
 Id.
 

 D. Disqualification Is an Appropriate Remedy
 

 This Court is well aware that disqualification of counsel is “a drastic measure which courts should hesitate to impose except when absolutely necessary,”
 
 Freeman v. Chicago Musical Instrument Co.,
 
 689 F.2d 715, 721 (7th Cir.1982), and that each case must be considered on its own merits and in its own particular factual context,
 
 Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,
 
 518 F.2d 751, 754 (2d Cir.1975).
 

 There is no question that “a party’s choice of counsel is entitled to substantial
 
 *LXXXVI
 
 deference” under our system of justice. Indeed, it is one of our most cherished privileges. For that reason permitting a litigant to retain its chosen counsel is a vitally important interest to be evaluated against disqualification and violation of ethical rules. Moreover, courts have recognized the sad reality that disqualification motions have become increasingly popular and must be viewed “with cautious scrutiny” given their use for “purely strategic purposes.”
 
 Laker Airways Ltd. v. Pan American World Airways,
 
 103 F.R.D. 22, 27-28 (1984).
 

 For the following reasons, the Court concludes, after weighing the different interests enumerated by Judge Green in
 
 Laker Airways,
 
 that disqualification is in fact the only appropriate remedy in this case. First, Mr. Koslowe, on the basis of his own time records, worked a total of 382 hours on the FDA Litigation. In the course of that representation, upon which he worked personally and substantially, he had extensive access to confidential information that could be of use to him in representing BATAS in its efforts to insulate certain documents from discovery by the Government. Work performed on the FDA Litigation constitutes a “matter” within the meaning of D.C. Rule 1.11. Thus, it is reasonable to infer that knowledge he gained during the course of that work could be useful to him in his representation of BATAS, in clear violation of the disciplinary rules of this jurisdiction.
 

 Second, the Court concludes that the Government has not filed this Motion as a diversionary litigation tactic. Quite the contrary.
 
 [19]
 
 In fact, the Government actually stands to win a Pyrrhic victory by prevailing on the Motion to Disqualify. The Government has been attempting to get the BATAS documents for close to two years, and BATAS has fought all those attempts. By obtaining the disqualification of BATAS’ present counsel, the Government’s efforts to obtain the documents in question will only be further delayed as BATAS seeks new counsel, obtains new counsel, and then educates that new counsel, as it must, about the issues in dispute.
 
 [20]
 

 Third, the District of Columbia Court of Appeals recognized that “the public is generally more concerned about government improprieties than about private improprieties. Thus, the appearance problem is more severe because the public is likely to be more critical of this potential misuse of information.”
 
 Brown,
 
 486 A.2d at 49. As this case has already been the subject of extensive attention in the media,
 
 [21]
 
 as one of the largest civil cases ever brought in our federal system, any alleged ethical violation is likely to come under particularly acute scrutiny given the public interest in both the subject matter of the case and the huge amount of resources devoted to the litigation.
 

 
 *LXXXVII
 
 Finally, as the court made clear in
 
 Brown,
 
 “where there is a close question as to whether particular confidences of the former client will be pertinent to the instant case, an attorney should be disqualified to avoid the appearance if not the actuality of evil.”
 
 Id.,
 
 486 A.2d at 43-44 (quoting
 
 U.S. v. Standard Oil,
 
 136 F.Supp. 345, 364 (S.D.N.Y.1955)). In addition, any doubts are to “be resolved in favor of disqualification.”
 
 Westinghouse Electric Corp. v. Gulf Oil Corp.,
 
 588 F.2d 221, 225 (7th Cir.1978).
 

 In this case, the Court has no such “doubts.” Mr. Koslowe spent 382 hours working on a “matter” which was substantially related to the issues he would be handling in the BATAS privilege litigation. By his own admission, he had sustained access to many confidential and privileged government documents. This is precisely the scenario addressed by D.C. Rule 1.11. This Court has an obligation under its own Code of Judicial Conduct to ensure that the disciplinary rules of the legal profession are complied with.
 
 See
 
 Code of Conduct for United States Judges, Canon 3B(3).
 

 Accordingly, the Motion for Disqualification of Neil H. Koslowe will be granted.
 

 E. Disqualification of Mr. Koslowe Is Imputed to Shearman & Sterling
 

 District of Columbia Rule 1.11(b) provides that the disqualification of a former government attorney because of his personal and substantial participation in a matter requires the concomitant disqualification of the law firm by which he has become employed. Imputed disqualification may be avoided if the disqualified lawyer’s present law firm has followed the provisions of Rule 1.11(c) and (d). Those paragraphs of Rule 1.11 require that the individually disqualified attorney notify the former government agency and all parties to the case of his or her personal disqualification, and that he will be screened off from any participation in the currently pending matter. Such notice of personal disqualification and screening must be issued
 
 before
 
 the current representation begins.
 
 See
 
 D.C. Bar Legal Ethics Committee Ethics Opinion 279 (1998);
 
 In re Asbestos Cases,
 
 514 F.Supp. 914 (E.D.Va.1981).
 

 There has been no compliance with Rule 1.11(c) and (d) in this case. No notices have been sent to the Department of Justice or any parties to this case that Mr. Koslowe is personally disqualified and that he will be screened off from any participation in litigation over the BATAS documents. Since the opposition brief of Koslowe,
 
 et al,
 
 does not address the imputation issue, the Court concludes that it is not seriously contested.
 
 [22]
 
 Therefore, the Motion to Disqualify Shearman
 
 &
 
 Sterling will be granted.
 

 H: :{c ifc ifc #
 

 For all the foregoing reasons, the Motion to Quash is granted and the Motion to Disqualify is granted.
 

 ORDER #518
 

 This matter is before the Court on the United States’ Motion to Quash Subpoenas Issued by Counsel for Neil H. Koslowe, Shearman & Sterling, and BATAS. Upon
 
 *LXXXVIII
 
 consideration of the Motion, the Opposition, the Reply, and for the reasons contained in the accompanying Memorandum Opinion, it is this 6th day of April, 2004, hereby
 

 ORDERED that the Motion is granted.
 

 ORDER #519
 

 This matter is before the Court on the United States’ Motion to Disqualify Neil H. Koslowe and Shearman & Sterling from Representing BATAS. Upon consideration of the Motion, the Opposition, Reply, and for the reasons contained in the accompanying Memorandum Opinion, it is this 6th day of April, 2004, hereby
 

 ORDERED that the Motion is granted.
 

 [1]
 

 . For the sake of brevity and ease of reading, Neil H. Koslowe, Shearman & Sterling and BATAS will be referred to as "Koslowe,
 
 et al.,"
 
 unless there is a need to refer to them separately and individually.
 

 [2]
 

 . Mr. Koslowe first disclosed his prior representation in a telephone call on October 20, 2003, prior to the October 23, 2003 meet and confer on BATAS' proposed Motion to Intervene, after Ms. Eubanks remembered that he had been an attorney at the Department of Justice ("DOJ”).
 

 [3]
 

 . Curiously, Mr. Koslowe was not present at that meet and confer even though he had refused to agree to an earlier one because he was not "available to participate.” U.S. Ex. 10, 12/30/03 Ltr. Koslowe to Eubanks.
 

 [4]
 

 . BATAS failed to meet and confer before filing the motion, as required.
 

 [5]
 

 . The parties have made numerous factual representations regarding Neil Koslowe and his work at the Department of Justice ("DOJ” or "Department”). Unless otherwise noted, the facts indicated are undisputed.
 

 [6]
 

 . The Government identified him as "Senior Litigation Counsel.”
 

 [7]
 

 . Dr. Kessler is no relation to this Court.
 

 [8]
 

 . In the 1990’s, several states sued tobacco manufacturers to recover costs they incurred in treating smoking-related diseases. In 1998, 46 states entered into the MSA with 38 tobacco manufacturers.
 

 [9]
 

 . Koslowe,
 
 et al.,
 
 did not dispute the Court's authority to review the Government’s privileged documents which it submitted
 
 in camera,
 
 and discussed and quoted from in its
 
 in camera
 
 briefs. The
 
 in camera
 
 portions of the documents discussed and quoted from in this Opinion will be italicized and redacted from the public version that is filed and served upon all counsel.
 

 [10]
 

 . Presumably, BATAS' corporate affiliate, Brown & Williamson, as a party to that litigation, had all of those court filings and could have shared them at any time with Koslowe,
 
 et al.
 

 [11]
 

 . In both its opening Motion to Quash and its Reply, the Government goes into much further detail as to why the discovery sought would not be relevant to the central legal issue in this motion, i.e., whether Mr. Kos-lowe had personal and substantial involvement in the FDA Litigation and his work on the MSA. In the interest of time and brevity, the Court has not discussed each and every one of those points, although they are all persuasive.
 
 See U.S.
 
 Mot. to Quash at 16-21; U.S. Reply at 10-21.
 

 [12]
 

 . The Government has made the following representations in its papers, unchallenged by Koslowe,
 
 et al.:
 

 As a result of [counsel’s] failure to consult and give the required prior notice, Mr. Kell learned of his deposition, scheduled for 10 a.m., Tuesday, February 10, 2004, only one day before the date he was commanded to appear, after returning from travel out of the country; Ms. Autor learned of her deposition, scheduled for 10 a.m., Monday, February 9, 2004, less than two business days beforehand, at around 2:30 p.m., Thursday, February 5, 2004. Mr. Thirolf and Mr. Letter both learned of their depositions (scheduled for 1 p.m. and 4 p.m., respectively, February 9, 2004) four business days in advance, around 5 p.m. or somewhat later on Wednesday, February 4, 2004.
 

 U.S. Mot. to Quash, p. 31. The Government’s papers seem to contain an error, as it appears that Mr. Thiroff and Mr. Letter had two or at most three days’ advance notice of the depositions.
 

 As Government attorneys, these four lawyers would have been well aware that they risked contempt of Court, as well as Bar disciplinary sanctions, if they failed to appear in response to the subpoenas.
 

 [13]
 

 . There is some suggestion that BATAS is now taking the position that it is not subject to Order #51. Lest there be any confusion on this issue, the Court wishes to make it crystal clear that if that is BATAS’ position, it is in error. In the Opinion accompanying Order # 449, the Court explicitly conditioned the granting of BATAS’ motion to intervene on
 
 its
 
 promise to comply with all discovery orders in the case:
 

 [I]t is absolutely necessary to spell out the representations that BATAS has made in its papers and upon which this Court is relying in granting the Motion for intervention.
 

 ... Finally, the Government raises the possibility that BATAS would not be willing as part of its limited intervention to be bound by any contempt finding and/or sanctions if it does not comply with discovery orders. In addition to promising to abide by the Court's final decision on privilege, BATAS has also represented that it will "acquiesce in the Court's orders governing review and production of the Documents.” Reply Mem. in Support of Motion, p. 19. There is no question in the Court's mind that these broad statements cover
 
 any
 
 issue relating to compliance with discovery orders relating to BATAS’ intervention.
 

 12/5/03 Mem. Op. at 5, 6-7 (emphasis in original).
 

 [14]
 

 .
 
 Brown
 
 addressed D.C.Code of Professional Responsibility DR 9~101(B) (1982), the predecessor to Rule 1.11. DR 9-101(B) provided:
 

 A lawyer shall not at any time accept private employment in connection with any matter in which he or she participated personally and substantially as a public officer or employee, which includes acting on the merits of a matter in a judicial capacity.
 

 BATAS does not claim that any differences between DR 9-101(B) and Rule 1.11 are relevant for purposes of this case.
 

 [15]
 

 . This memorandum to file has a footer "KOSLLTR,” strongly suggesting that it was drafted by Mr. Koslowe. None of the pleadings submitted on behalf of Mr. Koslowe challenge the attribution of letters with this footer to him.
 

 [16]
 

 . Koslowe, ef
 
 al.,
 
 do not deny of course that the FDA Litigation constitutes a "matter” under Rule 1.11.
 

 [17]
 

 . DOJ records show that Mr. Koslowe recorded working 142 hours on "motions and pleadings,” 17 hours on "opposition's discovery,” and 7 hours on "post-trial activity.” U.S. Reply Ex. 1.
 

 [18]
 

 . It will be remembered that the representation covered 382 hours over a period of approximately one to two years.
 

 [19]
 

 .Any suggestion that the Government did not act in a timely fashion in this matter is without merit. As noted earlier, Mr. Koslowe and Shearman & Sterling were retained some time in October 2003. BATAS' motion to intervene was not granted until December 5, 2003. Eight days later, the Government raised the disqualification issue with Mr. Kos-lowe, there were then communications back and forth, and the Motion to Disqualify was filed on January 21, 2004.
 

 [20]
 

 . It should also be noted that it is hardly in the Government's interest at this pre-trial stage of the litigation to be using its own finite resources in any way that
 
 is not
 
 truly productive. In other words, the Government has enough to do getting ready for trial without spending its time on meritless motions.
 

 [21]
 

 . See, for example, Vanessa Blum,
 
 DOJ Tobacco Suit: Drowning in Paper,
 
 The Legal Times (Washington, DC), March 15, 2004, at 1.
 

 [22]
 

 . It would appear that Mr. Koslowe did not bother to contact either the DOJ Civil Division Ethics Officer or the D.C. Bar Ethics Committee or Ethics Counsel to obtain any advice regarding the propriety of his representation of BATAS. The D.C. Bar Ethics Committee indicated that, when there is a close question on a representation issue, the decision should be in favor of declining the representation.
 
 See Brown,
 
 486 A.2d at 43-44 (quoting
 
 U.S. v. Standard Oil Co.,
 
 136 F.Supp. at 364).